EDWIN GRIBBLE *vs.* PIONEER-PRESS COMPANY.

July 25, 1887.

Libel—Evidence—Opinion.—In an action for a libel, expressed in ordinary language, witnesses should not be allowed to testify as to the meaning which they understood the libel to convey, or that they understood it to apply to the plaintiff an offensive term found in the article.

Plaintiff brought this action in the district court for Ramsey county, to recover damages for the libel alleged to be contained in the following article published by the defendant, viz.:

"But Mr. Donnelly is no exception to the rule that in the great majority of cases libel suits for pecuniary damages are only brought against reputable newspapers by the meanest sort of scallawags, shysters, and adventurers. For the most part they are simply mercenary speculation upon the chance of obtaining a verdict from an ignorant and prejudiced jury, by the aid of some crafty lawyer who is usually a partner in the speculation; that is to say, the lawyer takes the case as a purely business venture, on condition of his being paid half, or some other proportion, of the amount of damages awarded if he should succeed in bamboozling the jury. The Pioneer-Press has been pestered with a multitude of such libel suits, of which it has now on hand six or seven, exclusive of Donnelly's mock contribution, almost without exception brought or instigated by notorious sharpers, shysters, confidence men, adventurers, and other disreputable people, as a means of raising the wind, or occasionally as a sham plea in arrest of judgment, preparatory to their fleeing from the country. Mr. Donnelly is more than welcome to all the political advantage he can reap by enrolling himself in this congenial company. His able counsel, Mr. Brisbin, is to be congratulated in having been chosen to represent the

common griefs of Mr. Gribble and Mr. Donnelly in the suit of these delectable worthies against the Pioneer-Press."

This publication was contained in an editorial referring to a libel suit brought against the defendant by one Ignatius Donnelly. The action was tried before *Wilkin*, J., and a jury, and the plaintiff had a verdict for $5,000. Plaintiff appeals from an order granting a new trial.

*Edwin Gribble, pro se.*

*W. D. Cornish*, for respondent.

DICKINSON, J.[1]  The alleged libel upon which this action is brought will be found in the reporter's statement of the case. Upon the trial of the cause the court permitted several witnesses to testify that they, at the time of the publication, understood the article as using the term "shyster" as applicable to the plaintiff. Upon subsequent consideration, the learned judge who tried the cause having come to the conclusion that such evidence was inadmissible, a new trial was for that reason granted, and upon the same question the case is now before us for review.

We are of the opinion that the learned judge was right in his conclusion that the evidence was not admisssible. *Van Vechten* v. *Hopkins*, 5 John. 211, (4 Am. Dec. 339;) *Gibson* v. *Williams*, 4 Wend. 320; *Wright* v. *Paige*, 3 Keyes, 581, 583, 584; *Snell* v. *Snow*, 13 Met. 278, (46 Am. Dec. 730;) *White* v. *Sayward*, 33 Me. 322; *Rangler* v. *Hummel*, 37 Pa. St. 130; *McCue* v. *Ferguson*, 73 Pa. St. 333; *Daines* v. *Hartley*, 3 Exch. 200; and see opinion of Walworth, Ch., in *Maynard* v. *Beardsley*, 7 Wend. 560, (22 Am. Dec. 595.)

This is in accordance with the principle of the law of evidence, which in general limits the testimony of witnesses to a statement of the facts and circumstances within their knowledge, to the exclusion of their opinions and mental conclusions concerning the very matter in issue. The exceptional grounds upon which such evidence was deemed admissible in *Blakeman* v. *Blakeman*, 31 Minn. 396, (18 N. W. Rep. 103,) in an action for slander, and in some other cases, is a recognition of the applicability to such cases in general of the ordi-

[1] Berry, J., because of illness, took no part in this case.

nary rule of evidence.   No such exceptional reasons, no necessity, existed in this case for the resort to such testimony to inform the jury as to whether this printed publication was intended to apply the term "shyster" to this plaintiff, and the reasons which in general forbid a resort to such evidence were applicable here.   The question to be determined by the jury was, not what interpretation these witnesses had put upon the article when they read it, but what was its meaning? This the jury could determine directly from a reading of the article itself, and by the aid of such other facts and circumstances as might affect the question.   Whatever relevant facts, outside of the publication, could have enabled these witnesses to form an intelligent opinion or understanding that the offensive term was intended to be applied to the plaintiff, could have been placed before the jury, and the question in issue should have been determined by the jury from the established *facts* relevant to the issue, and not from the opinions or understanding of witnesses, which may have been based upon very insufficient reasons.   It would be a dangerous practice, not in general to be resorted to, to apply in a court of justice, for the interpretation of the conduct or of the language of men, the understanding, conclusions, opinions of others, which are too often formed under circumstances not conducive to an impartial, mature, and correct judgment.   That would be, in some degree, and in some sense, to substitute the irresponsible, hasty opinions of perhaps prejudiced minds for the calm, deliberate judgment of juries, acting under the sanctions and with the aids which attend their deliberations.   In the language of Shaw, C. J., in a similar case, (*Snell* v. *Snow, supra,*) to resort to such evidence "would be to make the defendant's liability depend, not on his own malicious intent and purpose in using the language, which might be quite innocent and free from blame, but upon the misconceptions or morbid imagination of the person in whose hearing they were spoken."

There were no peculiar circumstances, either as respects the language employed, or the manner of its utterance or publication, to justify a departure from the ordinary rules of evidence.   The effect of this testimony was simply to present to the jury the *opinions* of these witnesses as to the meaning of the libel, and that it was intended to

apply to the plaintiff the offensive term used in the article. It cannot be said that this testimony was harmless, and cannot have affected the result, unless it is to be also declared that the libellous article bears upon its face, and by necessary legal construction, the meaning and application which is given to it in this testimony. This we cannot declare. We deem that to be a question proper for the consideration of a jury, not necessarily to be determined from the article alone, but from it in connection with such circumstances as may be relevant to the question. As this may come before another jury for determination upon such evidence as shall there be presented, we refrain from commenting upon this feature of the case.

Order affirmed.

---

[1] Berry, J., because of illness, took no part in this case.