CHARLES J. KNOX v. JAMES MEEHAN and Another.[2]

April 29, 1896.

Nos. 9665—(17).

**Libel—Complaint.**

*Held*, in an action for libel, that the complaint states facts sufficient to constitute a cause of action.

Appeal by plaintiff from an order of the district court for Polk county, Ives, J., sustaining the demurrer of defendant James Meehan, Jr., to the complainant. Reversed.

*F. F. Davis* and *Ira C. Richardson*, for appellant.
*F. A. Grady* and *Henry W. Lee*, for respondents.

[1] Reported in 66 N. W. 974.        [2] Reported in 66 N. W. 1149.

COLLINS, J. Plaintiff's appeal is from an order sustaining a general demurrer to his complaint in an action for a libel said to have been contained in an article published in a newspaper of which defendants were the editors and proprietors. According to the complaint the article was in these words: "One of the B. M. U.'s occupied a pulpit in a local church on Sunday night. Saturday he was engaged in the endeavor to rob his neighbor, and Monday returned to his regular avocation of doing the Meehans up, as well as their friends and sympathizers. This religious hypocrite was the first man to cry 'boycott.'"

The contention of defendants' counsel is that this article was not libelous per se, and that plaintiff has failed to plead extrinsic facts sufficient to connect him with it, or sufficient to make its publication libelous as to him. We cannot agree with counsel on either proposition. Published words which directly tend to the prejudice or injury of a person, in his office, profession, trade, or business, are actionable. Williams v. Davenport, 42 Minn. 393, 44 N. W. 311. Any publication calculated to expose one to public hatred, contempt, or ridicule is libelous per se. Dressel v. Shipman, 57 Minn. 23, 58 N. W. 684. The article in question was extremely well calculated to prejudice and injure the individual so well described therein, and to expose him to public hatred, contempt, or ridicule. If plaintiff was intended, and understood by others to be intended, as the person referred to, and if the article was intended to apply to him, and this was so understood by those who read it, or knew that it was published, his right of action upon it was complete. As it contained matter of description, and alluded to circumstances from which readers and others might easily discover and know who was intended, it was not necessary that the person upon whom it reflected should be mentioned by name.

There is no merit in the claim that the allegations of the complaint are insufficient to show that plaintiff was the person alluded to and intended. It was set forth that plaintiff was a well-known member of an organization in the village in which the defendants' newspaper was published, and in which he resided, well and publicly known as the "Business Men's Union," its purpose and object being to promote and advance the business interests of the vil-

lage, and that on the Sunday night prior to the publication, in the absence of the officiating clergyman, plaintiff had occupied the pulpit of the Methodist Episcopal Church in said village, and had then and there read a discourse to the congregation. It was not only alleged that the matter contained in the article was published of and concerning the plaintiff, but coupled with the quoted language in the complaint were full and explicit innuendoes by which it was plainly, positively, and repeatedly asserted that plaintiff was meant and intended by the words "one," and "he," and "his," and "religious hypocrite" and also that by the letters "B. M. U.," in the opening phrase, the Business Men's Union, before mentioned, was meant and intended. The complaint identified the plaintiff as the object of the article, and the actionable quality of the matter published, as respects him, was clearly shown therein.

Order reversed.