## LOUIS L. TEN BROECK v. JOURNAL PRINTING COMPANY AND ANOTHER.[1]

February 11, 1926.

No. 25,082.

**Newspaper article not libelous per se.**

    1. A newspaper article which is not self-evidently defamatory is not libelous per se.

**Complaint defective.**

    2. Complaint on such an article *held* defective because it does not plead any extrinsic circumstances showing that the article was libelous in fact.

    Libel and Slander, 36 C. J. p. 1150 n. 74; 37 C. J. pp. 22 n. 16; 23 n. 24; 71 n. 84.

Action in the district court for Hennepin county to recover damages for libel. The case was dismissed by Montgomery, J., at the trial upon the ground that the complaint did not state a cause of action. Plaintiff appealed from an order denying his motion for a new trial. Affirmed.

*Per M. Larson* and *Olof L. Bruce*, for appellant.

*James E. O'Brien* and *Edward S. Bade*, for respondents.

STONE, J.

Action for libel, at the trial dismissed upon objection that the

[1]Reported in 207 N. W. 497.

complaint did not state a cause of action. Plaintiff appeals from the order denying his motion for a new trial.

Defendant printing company publishes the Minneapolis Journal and defendant Colby is in its employ as a reporter. Plaintiff is a physician and surgeon and for some time before August 27, 1922, resided at 4001 Grand avenue south, Minneapolis. On that day, the complaint alleges, defendants published in the Journal the article which, plaintiff claims, charged him with maintaining a brothel and "abortion establishment." It reads as follows:

### "SURGEON'S TABLE IN MYSTERY HOUSE

#### "Woman's Screams Over Phone Lead Police to Suddenly Vacated Dwelling.

"Tunnel like passage leading out of a basement in which there was a surgeon's operating table, was found by Patrolmen Edward Jones and Emil Neuson, police wagon-driver, at a house at 4001 Grand avenue, late yesterday, Captain of Detectives, Frank Brunskill, said last night. The police were sent to the house from the fifth precinct station after a telephone call from the switchboard operator at the Colfax Exchange, who reported she had heard over the wire from this house a woman's screams and a man's voice saying 'What are you doing?' Captain Brunskill said.

"In the rooms of the first floor the police found three beds and a dresser, Captain Brunskill said. The upstairs he said was luxuriously furnished. No one was found in the house at the time. Detective Forby has been assigned to watch it."

The falsity of the article and that it was intended to and did refer to plaintiff are averred, also that general and special damages resulted. The dismissal below was predicated upon the view that the article was not libelous per se and that there were no allegations of extrinsic facts showing that it was libelous otherwise. These questions we consider in their order.

1. It is too clear for much discusson that the article is not libelous per se. That is because its statements are not "clearly defamatory on their face." Pratt v. Pioneer Press Co. 30 Minn. 41,

14 N. W. 62. "Words which, upon their face and without the aid of extrinsic proof are injurious, are libelous per se, but if the injurious character of the words appear, not from their face in their usual and natural signification, but only in consequence of extrinsic circumstances, they are not libelous per se." Fry v. McCord, 95 Tenn. 678 (684), 33 S. W. 568, 570, citing Newell, Defamation, §§ 34, 35.

Any reading, casual or close, of the article in question leads to the conclusion that every word may be true and yet every owner or tenant of the premises be innocent of crime or other wrong. If, in fact, it was libelous, it was not so because of the literal meaning of the language, but because of the interpretation put upon it by reason of some peculiar facts, wholly external to the publication itself, which gave it the sinister meaning complained of.

2. The only thing in the complaint which is put forward as a pleading of such external facts is this:

"Plaintiff further alleges that by the said article the defendants and each of them intended to and did declare as follows: That the said physician was and is * * * , the plaintiff above named; that the premises * * * was the residence and office of * * * the plaintiff herein, and was used by him as a physician and surgeon; that [he] * * * used the said premises and operated the same for illicit, immoral and criminal practice in his profession * * *. That [he] * * * was not a respectable and reliable physician and surgeon but that he maintained a houes of ill-fame and an abortion establishment. That each and all of the readers of the said Minneapolis Journal and the said libelous article understood and believed that the said article referred to the plaintiff."

On inspection, that language reduces itself to a mere charge of what defendants intended and what they accomplished. It does not charge that "Mystery House" was at the time being another name for a bawdy-house; nor is it affirmed that anything had occurred or that any conditions existed which would produce an understanding that a surgeon's table in a "Mystery House" indicated

or even suggested an "abortion establishment." It is not averred that "tunnel like passages" leading out of basements were connected in the public mind with either brothels or illegal surgical operations. No previous or contemporaneous external facts are averred as having the effect of attaching to the facts published the actual defamatory meaning which the pleader affirms was conveyed to the readers.

It is unnecessary to carry farther this examination of what is not alleged. The condition is simply that the complaint makes no mention of the supposed lens of extrinsic fact through which the article, legally innocuous otherwise, was made to appear libelous in effect. The existence of such a lens and its effect, where there is no libel per se, are essentials of the cause of action and so issuable facts which must be pleaded. They have not been pleaded here and so the complaint is fatally defective.

The proposition is too well settled to require any review of authorities. The citation of a few is sufficient. The rule was thus stated, citing Townshend, Slander & Libel, § 308, in Newell v. How, 31 Minn. 235, 17 N. W. 383:

"In an action for libel, when the language of the publication is not actionable *per se*, but requires explanation by some extrinsic matter to make it actionable, the complaint must allege such extrinsic matter which, coupled with the language published, affects its construction, and shows that it conveyed the actionable meaning which plaintiff claims for it."

That is, the "actionable quality" not appearing from the publication per se, the extrinsic facts must be pleaded which show that it has in fact that quality. Smith v. Coe, 22 Minn. 276. The defamatory effect which makes for libel is established by facts and not the testimonially expressed opinions of witnesses as to the "meaning of the" libel. So in Gribble v. Pioneer-Press Co. 37 Minn. 277, 34 N. W. 30, it was held error to permit witnesses to testify that they "understood the article as using the term 'shyster' as applicable to the plaintiff." The question for the jury was "not what interpreta-

tion these witnesses had put upon the article when they read it, but what was its meaning."

While it is true that under the statute, section 9275, G. S. 1923, it is unnecessary to allege extrinsic facts for the purpose of showing the application to the plaintiff of the alleged libel, it is as necessary as ever to allege "extrinsic facts by way of inducement to show that the publication is libelous, or at least susceptible of a defamatory meaning under the circumstances, and so calculated to affect the plaintiff injuriously." Petsch v. Dispatch Printing Co. 40 Minn. 291, 41 N. W. 1034. See also Richmond v. Post, 69 Minn. 457, 72 N. W. 704.

The complaint being so clearly defective in the vital particular referred to, we have had no occasion to consider any other question.

Order affirmed.