## BURTON RUDAWSKY v. NORTHWESTERN JOBBERS CREDIT BUREAU AND OTHERS.[1]

March 6, 1931.

No. 28,317.

[1]Reported in 235 N. W. 523.

22

Kerr, Nelson, Burns & Mohan, for appellants.
Gustavus Loevinger and Francis M. Smith, for respondent.

HILTON, J.

Defendants appeal from an order overruling their demurrer to plaintiff's complaint, the court having certified that the question presented by the demurrer was in its opinion important and doubtful.

This is a libel action. In the · complaint the following facts (abbreviated) are alleged: Plaintiff was a traveling salesman in the employ of Samuel Rudawsky, Nathan Rudawsky, and Henry Rudawsky, a copartnership, doing business under the name of S. Rudawsky & Sons. The copartnership was adjudged a bankrupt, and defendant Rodgers was appointed receiver and thereafter trustee.

Rodgers and other individuals were instrumental in procuring in the United States district court for the state of Minnesota indictments against plaintiff and the other Rudawskys, charging them with the crimes of unlawfully conspiring to conceal assets from the · trustee in bankruptcy and of actually so concealing the same. At the trials on the indictments a verdict was directed in favor of Samuel Rudawsky, the jury found Nathan and the plaintiff not guilty, and Henry was never tried.

The complaint charges that the Northwestern Jobbers Credit Bureau (hereinafter referred to as the bureau) is a corporation engaged in the business of representing jobbers, wholesale dealers, banks, merchants, credit men, credit associations, and others in collecting accounts, taking charge of insolvent or bankrupt business enterprises and concerns, in procuring or aiding in the prosecution of persons who are alleged to have violated bankruptcy laws or defrauded creditors, and in representing the interests of creditors generally as against debtors. The defendant Rodgers was secretary, treasurer, and manager of the bureau and in full charge of its affairs. The other defendants were officers of the bureau more or less actively engaged in its affairs.

That during July, 1929, the defendants falsely and maliciously wrote, composed, printed, published and distributed, or permitted and authorized the writing, composing, printing, publishing, and distributing of the following false, defamatory, libelous and malicious matters of and concerning plaintiff, to-wit:

"CREDIT PROTECTION DEPARTMENT: Within the year the National Association for this district has established an office for two of its representatives of this Department at Room 234 Endicott Building, which is just outside our office. This move has been a very satisfactory one and has contributed materially to the work which is being done, for the reason that most of the cases handled and investigated are represented in this office.

"The outstanding disappointment in connection with this work, that is, a disappointment to this department and to this office, was the fact that Samuel Rudawsky, Nathan Rudawsky and Burton Rudawsky, Bankrupts, were tried in the United States District Court of St. Paul, in November, 1928, on two charges: conspiracy to defraud creditors and concealment of assets from the Trustee. They were acquitted.

"During the year there have been a number of indictments obtained as a result of very fine work on the part of the representatives of the Credit Protection Department and we are advised that

there are still a number of cases waiting for presentation to the Grand Jury."

The complaint further sets forth in detail what defendants, in said article, intended to and did charge plaintiff with being and doing, together with the understanding had thereof by persons reading the article.

The complaint recites the nature of plaintiff's business, the states in which he did business, the circulation of the article in those states, and the claimed resultant damages to him. It is also stated in said complaint "that in his said business he is dependent for his living and for his ability to transact business upon his good name and good reputation, and the good will of merchants and the public towards him."

The allegations by way of innuendo and inducement were proper; we cannot say that they were not warranted or that an unreasonable, forced, or unnatural construction was put forth different or beyond what "reasonable men would understand." The allegations in the complaint clearly distinguish this case from Cleary v. Webster, 170 Minn. 420, 212 N. W. 898, though the statements of law therein apply to both cases. Quist v. Kiichli, 92 Minn. 160, 99 N. W. 642; State v. Shippman, 83 Minn. 441, 86 N. W. 431; Knox v. Meehan, 64 Minn. 280, 66 N. W. 1149; Glatz v. Thein, 47 Minn. 278, 50 N. W. 127; Cole v. Millspaugh, 111 Minn. 159, 126 N. W. 626, 28 L.R.A. (N.S.) 152, 137 A. S. R. 546, 20 Ann. Cas. 717; Ten Broeck v. Journal Printing Co. 166 Minn. 173, 207 N. W. 497; 37 C. J. 22, et seq; 17 R. C. L. 398.

It will eventually be for a jury to determine as to the correctness of such allegations. They were in effect that the language adopted by the defendants was intended to charge the plaintiff with being a bankrupt and, by reason thereof, unable and unwilling to pay his obligations and debts and therefore not entitled to credit and not trustworthy in business; and further to charge the plaintiff with being guilty of the crimes of conspiracy and concealment, and, through a miscarriage of justice, to have been acquitted, al-

though guilty, and that the disappointment was because of the acquittal.

■ Appellants' contention that the word "bankrupt" is only libelous when applied to merchants is not sound. It is true that in many of the cases, particularly the older ones, merchants were the persons libeled; others however are not necessarily excluded. Appellants' further claim that plaintiff was not libeled because as a traveling salesman he did not need credit is not tenable.

In recent years, in many walks of life other than that of merchant, anything that injuriously affects.the credit reputation of an individual is a matter of importance to him, and his good reputation in that regard is a valuable asset of which he should not be maliciously deprived to his damage. The plaintiff's occupation (business) was such as to bring him within the protection of that rule if the allegations of the complaint are true. The statement that plaintiff was a bankrupt, taken in connection with the other statement in the article, manifestly conveyed the impression that plaintiff had been unable to pay his debts and had gone through bankruptcy. Such imputation was untrue and should not have been made. This is not a border line case. Our decision will not encourage vexatious litigation. It however grants to plaintiff legal redress if he has been damaged.

The suggestion of defendants that the article does not charge plaintiff with being a bankrupt and that the word is a very small and unimportant part and parcel of it, and that it is "surplusage and descriptive only," is, upon the record before us, clearly without merit.

■ The trial court, as disclosed by its memorandum, was of the opinion that the only part of the article that was libelous was that which designated plaintiff as a bankrupt; that the balance thereof was not libelous. With the latter conclusion we cannot agree.

In the briefs and oral argument of both parties they discussed the question as to whether the article, other than that part which charges plaintiff with being a bankrupt, is libelous. A desire was expressed that we pass upon it. In view of the fact that at a trial,

if one be had, the question undecided would again arise, we accede to that request.

We now consider the part of the article other than the specific charge that plaintiff was a bankrupt. The article and its title advertise the business in which the bureau is engaged and refers to the fact that the "National Association" has established an office for the use of two of its representatives in close connection with the office of the bureau. It explains that this move has been satisfactory and has contributed materially to the work for the reason that most of the cases handled and investigated are represented in the bureau office.

The article states that plaintiff and other "bankrupts" were tried in the United States district court on two charges: "Conspiracy to defraud creditors and concealment of assets from the Trustee," and then states that they were acquitted. The publication characterizes this situation as being "the outstanding disappointment in connection with this work, that is, a disappointment to this department and to this office." It next states that "during the year there have been a number of indictments obtained as a result of very fine work on the part of the representatives of the Credit Protection Department [the one indicated in the title of the article] and we are advised that there are still a number of cases waiting for presentation to the Grand Jury."

The fact that the article refers to the acquittal in a separate, short sentence at the close of the paragraph is of no moment whatever. A mere reading is sufficient to disclose what caused "the outstanding disappointment."

Defendants' claim that the disappointment referred to was not because plaintiff was *acquitted* but because he was *tried* or because an innocent man had been prosecuted is entirely unfounded. Defendants' vigilant and successful efforts brought about an indictment and trial. It is stated that they have secured and will secure indictments against others. Such efforts, when properly motivated and exercised in the interest of justice, are laudable and to be commended. We are not here concerned with such activities

of defendants, but only with the article here in question and what was done with it. The natural tendency of the article was such as to bring it within the definition of what constitutes a civil libel. In Davis v. Hamilton, 85 Minn. 209, 212, 88 N. W. 744, 745, it is stated:

"The law of libel is that any written or printed words are action-, able which tend to injure the reputation or good standing of a person, and thereby expose him to public hatred, contempt, or ridicule, or which tend to degrade him in society, lessen him in public esteem, or lower him in the confidence of the community, even though the words do not impute to him the commission of a crime or immoral conduct. Every false and malicious publication which naturally tends to injure a person's character, or lower him in the confidence and respect of his neighbors, is libelous and actionable."

■ Many libel cases have been considered by this court in which statements are found bearing upon the law of libel in its many angles. Among them are the following decisions: Pratt v. Pioneer Press Co. 30 Minn. 41, 14 N. W. 62; Dennis v. Johnson, 42 Minn. 301, 44 N. W. 68; Byram v. Aiken, 65 Minn. 87, 67 N. W. 807; McDermott v. Union Credit Co. 76 Minn. 84, 78 N. W. 967, 79 N. W. 673; Keating v. Prudential Cas. Co. 140 Minn. 391, 168 N. W. 178; N. W. Detective Agency, Inc. v. Winona Hotel Co. 147 Minn. 203, 179 N. W. 1001; 4 Dunnell, Minn. Dig. (2 ed.) §§ 5501 and 5517, and cases cited; also see Turner v. Brien, 184 Iowa, 320, 167 N. W. 584, 3 A. L. R. 1585; Moore & Munger Co. v. Motor Trades Pub. Co. 170 App. Div. 779, 155 N. Y. S. 929; Hynds v. Fourteenth St. Store, 159 App. Div. 766, 144 N. Y. S. 1030; 36 C. J. 1191 (note 7), 1192 (note 20) ; 37 C. J. 22, et seq.

We reach the conclusion that the complaint was not demurrable. There should be a trial on the merits, after a proper defensive answer has been interposed and replied to if necessary; plaintiff should recover suitable damages if he proves that he has suffered any. The order of the trial court, as modified in accordance with this opinion, overruling the demurrer, is affirmed.

Affirmed.