## CLARE v. FARRELL et al.
### Civil Action No. 2105.

District Court, D. Minnesota,
Fourth Division.
March 10, 1947.

Hughes, Morgan, Skahen & Fisch, of Minneapolis, Minn., for plaintiff.

Reed & Derrick, of Minneapolis, Minn. (Arthur E. Farmer and Benjamin H. Stern, of New York City, and John H. Derrick, of Minneapolis, Minn., of counsel), for defendant Farrell in support of the motion.

NORDBYE, District Judge.

This action is based upon the theory of libel. Plaintiff, whose true name is Bernard Clare, is employed by a newspaper in the City of Minneapolis, and writes items for that paper. He has followed that occupation at various locations including Minneapolis and Duluth, Minnesota, Detroit, Michigan, Milwaukee and Superior, Wisconsin, and Iowa Falls, Iowa, since 1917. His writing has extended into the newspaper, magazine, and periodical field, particularly in the states of Minnesota, Wisconsin and Michigan. He alleges that his name is widely and favorably known among publishers and the reading public in that area.

Defendant is an author by profession, residing in New York City. He has written many books, novels, and short stories, published in book form and otherwise, which have had a wide circulation throughout the United States and foreign countries. In May, 1946, a book written by defendant known and designated as "Bernard Clare" was published and circulated throughout the country by his publisher, the Vanguard Press. A copy of the book is attached to the complaint herein and is made a part thereof by reference. It deals with an aspiring young writer by the name of Bernard Clare who goes from Chicago to New York to pursue a writing career but who never actually does any writing for publication. His thoughts, hopes, observations, frustrations, and sordid experiences are dealt with in considerable detail.

Plaintiff bases his action on the theory that the book purports to relate the experiences of a person who aspired to be a writer and who has the same name and appearance as himself. He contends in his complaint that the defendant knew, or in the exercise of reasonable care should have known, of plaintiff and his work as "a respected member of his [plaintiff's] profession" and that defendant did, "in utter disregard for and indifference to [defendant's] duty to use and exercise due care and diligence, * * * willfully, negligently, and wrongfully compose, edit, publish, and circulate said book * * * as portraying and narrating the true facts of the life of said 'Bernard Clare,' the plaintiff herein, * * *." But it is significant that, while language in the complaint generally charges defendant with publishing and circulating the book as portraying and narrating the true facts of the life of the plaintiff, there is not the slightest substantiation for that assertion to be found in the affidavits filed by plaintiff in meeting defendant's motion for summary judgment. All plaintiff contends in his answering affidavit is that "it (the book) has come to the attention of many persons in several different States and cities who either knew, or knew of, this plaintiff, which fact has been brought very vividly to plaintiff's attention." He does not state or contend in his affidavit that these persons believed that the Bernard Clare of the novel was this plaintiff.

That the recitals contained in the book with reference to Bernard Clare's conduct are libelous per se must be conceded if the plaintiff has been libeled, for they are injurious without the aid of extrinsic facts. The conduct imputed to the character tends directly to expose the character to public hatred, contempt, and ridicule. Recitals or words causing such a result are libelous per se in Minnesota. Dressel v. Shipman, 57 Minn. 23, 58 N.W. 684; Pratt v. Pioneer Press Co., 30 Minn. 41, 14 N.W. 62; Ten Broeck v. Journal Printing Co., 166 Minn. 173, 207 N.W. 497.

Plaintiff's complaint, taken with counsel's position at the argument on this motion and the apparent assumption made in the plaintiff's affidavit, appears to be based primarily upon defendant's alleged negligence in failing to inquire whether any actual person engaged in the writing profession possessed the name of the book's chief character. But whether the action is based upon defendant Farrell's negligence or upon his intent to write of and concerning the plaintiff, the result herein would appear to be no different.

The jacket of the book designates the the story as "a major full length novel." And it is quite apparent from a reading of the book that it was intended as a work of fiction. Moreover, the undisputed facts established by the moving papers leave not the slightest vestige of doubt in that regard. The moving papers show, without contradiction, that the novel passed through several years of consideration and writing; that the name "Bernard Clare" was selected because the principal of the novel was to be of Irish extraction and because the author desired to select a name which would connote his nationality. The surname "Clare" evolved from the spelling "C-l-a-i-r-e" to "C-l-a-r-e" after County Clare in Ireland. The story was intended to be entirely fictional, though to some extent it is woven around the experiences and observations of the author himself when he, as a young man, went from Chicago to New York in order to become a writer. Defendant Farrell had never

heard of plaintiff, and, so far as the record shows, plaintiff never went from Chicago to New York or ever did any writing in New York or the Eastern United States. In fact, plaintiff does not contend that any of the events in the book even remotely. tend to identify him as the person about whom the author was writing.

There can be no doubt that, upon the basis of the undisputed facts appearing on this motion, defendant did not intend to write the book of plaintiff or intend to appropriate plaintiff's name to the story. This is so clear that no jury could find otherwise. Consequently, if the Minnesota law of libel requires that, in order for plaintiff to recover, the author must have intended to write of and concerning the plaintiff, plaintiff cannot recover. Although no Minnesota case appears to have decided if a libel must only be based upon intent to write of and concerning the plaintiff, as distinguished from negligence, it seems significant that none of them speak in terms of negligent conduct on the part of the writer. All state the test of libel in terms of intent. Knox v. Meehan, 64 Minn. 280, 66 N.W. 1149; Dressel v. Shipman, supra. See, also, Section 544.25 of the Minnesota Statutes 1945 and M.S.A. In Knox v. Meehan, supra, the court summarizes the bases upon which libel can be predicated by stating: "If plaintiff was intended, and understood by others to be intended, as the person referred to, and if the article was intended to apply to him, and this was so understood by those who read it, or knew that it was published, his right of action upon it was complete." In Dressel v. Shipman, supra, plaintiff was not named in the article, but the complaint alleged extrinsic facts to show that the article was intended to apply to him. The issue was whether the defendant intended the article to apply to the plaintiff, and in that regard the court stated (57 Minn. at page 25, 58 N.W. at page 684):

"If it [the libelous article] was intended to apply to plaintiff, and was so understood by others, his right of action upon it was complete. * * * The evidence of the circumstances of plaintiff was such, in connection with those referred to in the article, as to make it a question for the jury whether the plaintiff was intended and understood by others to be intended by it."

The Minnesota cases on libel seem to test the right of recovery, first, on whether the author of the defamatory article intended to write of and concerning the plaintiff, and second, whether it was so understood by those who read the article or by those who knew of its contents. The showing herein demonstrates conclusively that the first requirement of this test is wholly unfulfilled.

But even if the Minnesota law permits recovery if the writer negligently wrote of and concerning the plaintiff in a defamatory manner, plaintiff is not entitled to recovery on the showing herein. It must be remembered that plaintiff does not contend that any of the events of the book, the locale, or the other characters depicted are in any way identified or associated with the plaintiff or his experiences. Plaintiff does not contend that he went to New York from Chicago to seek his career as a writer, or that he returned chastened but matured by his experiences as befell the Bernard Clare of the story. And there was an assumption by plaintiff's counsel at the argument of this motion, and it is clearly established by the defendant's moving affidavits, that defendant did not know of plaintiff nor had he ever heard of the plaintiff before writing this novel. So the fact that the description in the book of the character "Bernard Clare" may fit plaintiff (which was neither proven nor disproven at the hearing) does not stem from any negligence by the defendant in describing a person whom he knew or thought to exist, or in describing events involving a person whom he knew or thought to exist. There was no reason for defendant to assume that there might be an actual Bernard Clare in existence. The negligence, if it existed, was defendant's failure to exercise reasonable care to determine if there was a person with the name of the chief character in his book. The use of the name Bernard Clare and the description of him as an aspiring writer was the cause of the alleged damages, and arose as a result of defendant's alleged failure to exercise

reasonable care to determine if a person like his fictitious character actually existed. The negligence here, if any, was an omission, not a commission.

It would be an astonishing doctrine if every writer of fiction were required to make a search among all the records available in this Nation which might tabulate the names and activities of millions of people in order to determine whether perchance one of the characters in the contemplated book designated as a novel may have the same name and occupation as a real person. At least some latitude must be given authors in their selection of names for characters so that the production of fictional literature may continue, and the mean, the base, and the good of the characters therein fearlessly portrayed. In a country of this size, which contains all nationalities, it seems quite obvious that, if an author used a name which was possessed by no one, it would be pure accident. Obviously there are no readily available records which would furnish any one all the desired information in that regard. Although some type of search, the extent thereof depending upon the type of material contained in the book and other circumstances, might reasonably be required in some cases, it seems absurd to place upon the author of this book the Herculean task and duty to search every directory, gazeteer, or telephone book for that purpose. Plaintiff does not contend that his name was listed in any information service or reference work as a writer or author. He does not point out any source to which defendant might have gone in the exercise of reasonable care to ascertain if there was an actual Bernard Clare listed as a writer or as a newspaper man. The question, therefore, may be pointedly asked: What should defendant have done, in the exercise of reasonable care, to determine whether a person named Bernard Clare actually existed? The fictional Bernard Clare was not pictured in the book as a newspaper man or as a writer for periodicals. He had never written anything for publication. What records, under the circumstances, in the exercise of reasonable care should defendant have searched which would have divulged the existence of this plaintiff? As stated, plaintiff points to none. Moreover, there was no more reason to search the newspaper records or the press agencies' records for writers in that field than to examine, for instance, the available data concerning present writers of mystery stories or moving picture scenarios. The early life of the fictional Bernard Clare bore no relation to a writer in any particular field of writing. The showing under the circumstances demonstrates that in all probability it would have been a practical impossibility for the defendant in the exercise of reasonable care to have discovered the existence of the plaintiff. No rule of conduct in the law of negligence requires defendant to do the impossible. Hindsight cannot be substituted for reasonable foresight. As illustrative of the results of any search which might have been made by the defendant, reference may be made to the showing herein that a trained reference worker searched the available records in the New York Public Library in a special effort to find any reference to the plaintiff. Search was made in the New York Public Library card catalog, the Library of Congress catalog, the Readers' Guide, the International Index to Periodicals, the Public Affairs Information Service, and the Catholic Periodical Index. In none of these reference works was there any mention or record either of plaintiff or any other writer or journalist named Bernard Clare. To contend that this search is immaterial because it was made after this lawsuit was instituted is no answer. Negligence is based upon the charge that the defendant failed to exercise reasonable care in determining if there was a person known as Bernard Clare who was engaged as a newspaper man or a writer. The principle that plaintiff cannot recover for the defendant's breach of conduct unless that breach is the proximate cause of plaintiff's damage seems almost axiomatic and is clearly the law of Minnesota. Prosser, The Minnesota Court on Proximate Cause, 21 Minnesota Law Review 19. And that principle, in view of all the facts noted, prevents plaintiff from recovering here upon the grounds that defendant negligently libeled him.

The real cause of whatever damages plaintiff has suffered would seem to be the ignorance of some people in assuming that the novel depicted plaintiff's life. It is inconceivable that any sensible person could assume or believe from reading this book of fiction that it purported to refer to the life or career of the Bernard Clare who was a newspaper writer in Minneapolis. In any event, it seems too clear for dispute that defendant's failure to make an investigation as to whether anyone like plaintiff existed was not the proximate cause of the damages which may, for present purposes, be assumed to exist.

Plaintiff has cited several cases which he contends are in point. The Minnesota cases cited, however, all involve a situation in which the defendant intended to speak of the plaintiff therein. The absence of defendant's intent to speak of plaintiff here is too clear for doubt, and it clearly distinguishes this case. The other cases relied on by plaintiff may be noted as follows:

In Harrison v. Smith, 20 L.T.R. 713, the writer intended to write about a specific person of whom he had heard. Although he thought that the name given him was fictitious, the name was real, and the actual person of whom he intended to write was damaged by the defamatory statements. The court charged the jury that "if the writer intended to portray the character of some living person, he could not be heard to say that he did not know that the person bore the name which he used, or would be injured by the libel." He further charged, "I do not put to you the question whether this is a libel or not, but simply does the writer intend to apply to the plaintiff. If the character had been purely imaginary, a creature of fancy, then, although it turns out that the plaintiff bears the name of the fictitious character, it would not be a libel at all." The Harrison case obviously is distinguishable from the instant one upon the premise that in the instant case the writer intended to portray no actual person. The last sentence of the charge supports the defendant's position herein.

Jones v. Hulton, 1909, 2 K.B. 444, affirmed [1910] A.C. 20, also was concerned with intent. Like in the Harrison case, supra, the writer there intended to write of an actual person whom he had seen. Although he intended to use a fictitious name, he made no attempt to so indicate in the newspaper article in which he described the incident. The name he adopted was that of a well-known person of the same name who had previously contributed signed articles to the same newspaper. An element of fault in adopting that name, without indicating its fictitiousness, clearly was present. No one raised the question of proximate cause. And the holding of the case appears to be that if defendant, intending to write a defamatory article about a real person, hit a person other than the one intended, he became liable to the injured party. Neither the intent nor the fault present there exists here.

Hanson v. Globe Newspaper Co., 159 Mass. 293, 34 N.E. 462, 20 L.R.A. 856, denied recovery to the plaintiff and proceeded upon the theory that the person named (the plaintiff there) was not the one intended to be named by the writer.

Louka v. Park Entertainments, 294 Mass. 268, 1 N.E.2d 41, 43, concerned a plaintiff whose photograph was placed in the lobby of defendant's burlesque house along with the pictures of some of the performers of the place. Plaintiff was a prominent actress who performed at places other than burlesque houses. The court there rejected defendant's claim that he was not liable because he did not know plaintiff and did not intend to refer to her when using her picture. The appellate court held: "It is plain that the publication could be found to have been made of and concerning the plaintiff even if the defendant knew nothing about the plaintiff. The use of her picture shows that." So this case too is distinguishable from the instant one upon the premise that there defendant intended to refer to the plaintiff.

Burton v. Crowell Pub. Co., 2 Cir., 82 F.2d 154, involved a photograph of the plaintiff therein. Although defendant there did not intend to defame the plaintiff, it obviously intended to portray him. The question there turned on liability regardless of intent to defame. The court did not hold that there was no intent to portray plaintiff therein. The contrary appears to have been assumed. Sharpe v. Larson,.

1897, 67 Minn. 428, 70 N.W. 1, 554, also holds that if defendant intended to speak of and concerning the plaintiff, plaintiff could recover even if defendant did not intend to injure plaintiff thereby.

In view of these premises and discussion, therefore, it seems clear that if this case went to trial there would not be a material question of fact presented. Plaintiff has wholly failed to meet the motion for summary judgment and has failed to indicate any issue of fact that could be presented to a court or jury if the instant motion were denied. Defendant has sustained his burden to prove that no material question concerning liability exists. Under such circumstances, defendant's motion for a summary judgment must be granted. Sartor v. Arkansas Gas Corp., 321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967; Sprague v. Vogt, 8 Cir., 150 F.2d 795, 800; Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318, 322.

It is therefore ordered that the motion of defendant Farrell for a summary judgment in his favor be granted.

An exception is reserved to the plaintiff.