[No. B007537. Second Dist., Div. Seven. Nov. 14, 1985.]

BERTHA AGUILAR, Plaintiff and Appellant, v.
UNIVERSAL CITY STUDIOS, INC., et al.,
Defendants and Respondents.

COUNSEL

Marco E. Lopez for Plaintiff and Appellant.

Youngman, Hungate & Leopold and Edward A. Ruttenberg for Defendants and Respondents.

OPINION

JOHNSON, J.—This is an action for defamation, invasion of privacy, intentional and negligent infliction of emotional distress arising out of the portrayal of the character "Bertha" in the motion picture "Zoot Suit." Plaintiff, Bertha Aguilar, claims she is the character "Bertha" and that she is falsely portrayed in the film as "a fornicating woman of loose morals."

FACTS AND PROCEEDINGS BELOW

The motion picture "Zoot Suit" is a work of fiction based on the sensational 1942 Sleepy Lagoon murder case and the ensuing "zoot suit" riots. (See *People* v. *Zammora* (1944) 66 Cal.App.2d 166 [152 P.2d 180].) The Sleepy Lagoon case involved 22 Mexican-Americans charged with murder after a man was found dead following an altercation at a party near a lover's lane in Los Angeles known as Sleepy Lagoon. (66 Cal.App.2d at pp. 173-178.) Twelve of the defendants were convicted of murder in the well-pub-

licized trial. Their convictions were overturned on appeal. (See *People* v. *Zammora, supra.*)

"Zoot Suit" focuses on the activities, trial, imprisonment and appeal of four of the Sleepy Lagoon defendants. The screen play was adapted by Luis Valdez from his play of the same name. Mr. Valdez is a defendant in the present case along with Universal City Studios, Inc. (Universal) and the Pacific Cinerama Dome Theater (Cinerama Dome).

The gist of Ms. Aguilar's libel complaint is that the character "Bertha" is depicted as unchaste. This allegation is based on a single reference to "Bertha" which implies she had had sexual relations with another character in the back seat of a car. Ms. Aguilar also contends the film invaded her privacy by exposing "unsavory incidents" from her past.

Judgment was granted in favor of Universal on all causes of action pursuant to Code of Civil Procedure section 437c. Ms. Aguilar appeals from this judgment.[1] We affirm.

## Discussion

In order to succeed on any of her causes of action, Ms. Aguilar must first establish she is portrayed in the film "Zoot Suit." ▪ The test is whether a reasonable person, viewing the motion picture, would understand the character "Bertha" was, in actual fact, Bertha Aguilar conducting herself as described. (*Bindrim* v. *Mitchell* (1979) 92 Cal.App.3d 61, 78 [155 Cal.Rptr. 29].) This issue may be resolved on a motion for summary judgment. (*Clare* v. *Farrell* (D. Minn. 1947) 70 F.Supp. 276; *Smith* v. *Huntington Pub. Co.* (S.D. Ohio 1975) 410 F.Supp. 1270; *Wheeler* v. *Dell Publishing Co.* (7th Cir. 1962) 300 F.2d 372; and see *Bindrim* v. *Mitchell, supra,* 92 Cal.App.3d at p. 78.)

We have reviewed the documents supporting and opposing the motion for summary judgment and we have concluded no reasonable person could understand the character "Bertha" in the motion picture "Zoot Suit" to be a portrayal of Ms. Aguilar.

In support of her argument summary judgment was improper Ms. Aguilar makes three points relating to the issue of identity. The film uses the name

---

[1]Although she purports to appeal from the court's nonappealable minute order of May 4, 1984, we will treat the appeal as being from the subsequent judgment filed July 23, 1984. (Cal. Rules of Court, rule 1, subd. (a), rule 2, subd. (c).) This judgment is appealable even though it does not adjudicate plaintiff's claims against Valdez and the Cinerama Dome. (*Walker* v. *Stauffer Chemical Corp.* (1971) 19 Cal.App.3d 669, 671 [96 Cal.Rptr. 803].)

"Bertha"; Ms. Aguilar was a participant in the Sleepy Lagoon incident; and other persons have concluded she is the character "Bertha." For the reasons set forth below, this evidence is insufficient to raise a triable issue as to whether Ms. Aguilar is portrayed in the film.

**1.** *Mere Identity or Similarity of Names Is Insufficient to Prove a Work of Fiction Is of and Concerning a Real Person.*

In the film, only the character's first name, "Bertha" is used. That first name is identical to plaintiff's and therefore similar to her full name, Bertha Aguilar. However, as a matter of law, mere similarity or even identity of names is insufficient to establish a work of fiction is of and concerning a real person. (*Clare* v. *Farrell, supra,* 70 F.Supp. at p. 280; *Middlebrooks* v. *Curtis Publishing Company* (4th Cir. 1969) 413 F.2d 141, 143; Rest. 2d Torts, § 564, com. d.)

In *Clare,* the defendant authored a novel describing the thoughts, hopes, observations, frustrations and sordid experiences of an aspiring writer named Bernard Clare. Plaintiff was a newspaper writer whose true name happened to be Bernard Clare. After pointing out there were no similarities between the real Bernard Clare and the fictional one, other than their names and a tangential similarity in profession, (70 F.Supp. at pp. 278-279), the court observed, "It is inconceivable that any sensible person could assume or believe from reading this book of fiction that it purported to refer to the life or career of the [real] Bernard Clare . . . ." (*Id.,* at p. 280.)

Summary judgment was also upheld in *Middlebrooks* v. *Curtis Publishing Company, supra,* despite a factual showing by the plaintiff the defendant had deliberately used a variation on plaintiff's name in a fictional short story and many witnesses who testified they believed the character Esco Brooks portrayed in the story was the plaintiff, Larry Esco Middlebrooks. (413 F.2d at p. 142.) The court acknowledged labeling the story fiction "does not insure immunity when a reasonable man would understand that the fictional character was a portrayal of the plaintiff." (*Id.,* at p. 143.) However, the marked dissimilarities between the fictional character and the plaintiff supported a finding against the reasonableness of an identification between the two. (*Ibid.*)

Among the factors considered in *Middlebrooks* were the difference in ages between the fictional character and the plaintiff, the absence of the plaintiff from the locale at the time of the incident, the differences in employment between the character and the plaintiff and the fact the story "did [not] parallel the plaintiff's life in any significant manner." (413 F.2d at p. 143.)

As we point out below, like factors support a finding against Ms. Aguilar in the case before us.

### 2. *There Is No Similarity Between Ms. Aguilar and "Bertha" in Terms of Age or Physical Appearance.*

In the case before us there are no similarities, such as age and physical appearance, which might lead a trier of fact to reasonably conclude "Bertha" is the plaintiff, Bertha Aguilar. Ms. Aguilar was 13 years of age at the time of the Sleepy Lagoon incident; "Bertha" is not a 13-year-old girl. Even Ms. Aguilar admits she is "much older than 13." She also admits at the time of the Sleepy Lagoon incident she did not look or dress like "Bertha."

In a similar case, *Wheeler* v. *Dell Publishing Co., supra,* arising from the novel "Anatomy of a Murder," the court held no reasonable person would identify the 9-year-old plaintiff with the 16-year-old romantic lead or with another 16-year-old character who plays an "inconspicuous part" in the novel.[2] (300 F.2d at p. 376.)

### 3. *Ms. Aguilar's Involvement in the Sleepy Lagoon Incident Bears No Resemblance to the Involvement of "Bertha."*

■ Close parallels between real and fictional events may establish a reasonable belief in identity despite the author's efforts to hide the real person through alteration of name or physical appearance. (Cf. *Clare* v. *Farrell, supra,* 70 F.Supp. at p. 278 and *Wheeler* v. *Dell Publishing Co., supra,* 30 F.2d at p. 376; *Middlebrooks* v. *Curtis Publishing Co., supra,* 413 F.2d at p. 143; with *Fetler* v. *Houghton Mifflin Co.* (2nd Cir. 1966) 364 F.2d 650, 651; and *Bindrim* v. *Mitchell, supra.*)

*Bindrim* v. *Mitchell* was a case in which there were no similarities in name or physical appearance between the fictional character and the plaintiff. (92 Cal.App.3d at p. 75.) But, both the fictional therapist and the plaintiff engaged their patients in "nude encounters." More significant, "the transcripts of the actual encounter weekend show a close parallel between the narrative of [defendant's] novel and the actual real life events." (*Id.,* at p. 76.) Thus, a reasonable person, certainly one who had participated in the nude encounter weekend, could recognize plaintiff as the therapist in defendant's novel. (*Id.,* at p. 75.) Similarly, in *Fetler* v. *Houghton Mifflin Co., supra,* the plaintiff and his fictional counterpart were the oldest sons

---

[2]In "Zoot Suit," the role of "Bertha" is a minor part. She appears in only seven scenes, speaks eight lines of dialogue and is listed thirty-first in the film's acting credits.

of a minister who toured Europe in a bus with his 13 children giving concerts in the 1930s. A reasonable person could hardly fail to understand the character in the novel was, in actual fact, the plaintiff.

 Turning to the case before us, we see Ms. Aguilar grew up in the neighborhood where some of the Sleepy Lagoon participants lived. Her sisters were friends of members of the 38th Street Gang. Ms. Aguilar knew some of the gang members from seeing them in the neighborhood but she was not friends with any gang members. She did not hang out with the gang. She never attended any of its parties. In contrast, "Bertha" is clearly "in" with the gang. She goes to gang parties, dances with gang members and behaves in a way that suggests she is a member of the gang.

Ms. Aguilar's family was a close friend of the Leyvas family. Henry Leyvas, the real-life leader of the 38th Street Gang, was one source for the character Henry (Hank) Reyna, the gang leader in "Zoot Suit." Ms. Aguilar never dated Henry Leyvas. In fact, at the time of the Sleepy Lagoon incident Ms. Aguilar had never had a boyfriend and had never been out alone with a boy. In the film, "Bertha" is the ex-girl friend of Henry Reyna, the gang leader. Furthermore, there is no indication in the film "Bertha's" family and Henry's family are friends or that "Bertha" has sisters or brothers in the gang or who are friends with gang members.

On the evening of the Sleepy Lagoon incident, Ms. Aguilar "tagged along" with some of the 38th Street Gang to Sleepy Lagoon and then to a house where there appeared to be a party. As the gang approached the house some people came out of the yard and a fight broke out. One man was killed. This fight and killing subsequently became known as the Sleepy Lagoon case. During the fight, Ms. Aguilar stopped a girl from striking another girl with a bottle. She was not a witness to the murder and was not a defendant in the criminal prosecutions following the incident. (*People* v. *Zammora, supra,* 66 Cal.App.2d 166, *passim.*) She did testify at the trial. Ms. Aguilar was placed in the Ventura State School for Girls as a result of her conduct during the incident. Unlike Ms. Aguilar, "Bertha" is not shown as being present during the Sleepy Lagoon incident. There is no reference to any proceedings, criminal or juvenile, involving "Bertha."[3]

To be sure, Sleepy Lagoon was a real place and the Sleepy Lagoon murder and trial real events. However, according to her own testimony, Ms.

---

[3] In the film, Henry's girl friend, "Della," is present at the Sleepy Lagoon incident, testifies at Henry's trial and is remanded to the Ventura State School for Girls. Ms. Aguilar would have had a stronger case, at least on the issue of identity, if she claimed she was portrayed by "Della" rather than by "Bertha."

Aguilar's role in the Sleepy Lagoon incident was so obscure and attenuated and so dissimilar to "Bertha's" no reasonable person could connect the two.

Finally, there is the uncontradicted testimony of the author, Luis Valdez, he had never heard of Ms. Aguilar until after the play was written. The similarity in names appears to have been purely coincidental. Valdez testified he chose the name "Bertha" because it is associated with someone big and strong. Valdez wanted a "big" character in this role. As the court observed in *Clare* v. *Farrell, supra,* "At least some latitude must be given authors in their selection of names for characters so that the production of fictional literature may continue, and the mean, the base, and the good of the characters therein fearlessly portrayed." (70 F.Supp. at p. 279.) In a country of this size, containing all nationalities, it would be truly remarkable if an author used a name which was possessed by no one. Only the creator of "Mork" from Ork would appear to be safe.

*4. The Fact Someone Did Believe a Fictional Character Was Portraying Plaintiff Is Irrelevant if the Belief Was Not Reasonable.*

A cause of action for defamation is not established merely because someone believes the character depicted as "Bertha" referred to plaintiff. "The issue [is] whether persons who knew or knew of the plaintiff could *reasonably* have understood the exhibited picture to refer to [her]." (*Davis* v. *R.K.O. Radio Pictures* (8th Cir. 1951) 191 F.2d 901, 904.) Thus, in *Middlebrooks, supra,* summary judgment in favor of defendant was upheld despite the plaintiff producing many witnesses who testified they believed a character in the story was the plaintiff. (413 F.2d at p. 142.)

Ms. Aguilar produced only one witness who claimed to believe "Bertha" was Bertha Aguilar. This witness based her belief solely on the coincidence of the first names. The witness had never seen Ms. Aguilar as a teenager. The witness did not believe Ms. Aguilar, now or in the last 25 years, looked anything like the actress who played the role of "Bertha" in the film. This identification was per se unreasonable and did not raise a triable issue of fact as to whether Ms. Aguilar is portrayed as "Bertha" in the film "Zoot Suit."

DISPOSITION

Because we dispose of this appeal on the ground there is no triable issue of fact as to whether the plaintiff is portrayed in the film we need not reach the other issues raised by the parties.

The judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.