## NOKIS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 15, 1919.)·

No. 5257.

1. PROSTITUTION ⬤═5—VIOLATION OF WHITE SLAVE TRAFFIC ACT—QUESTION FOR JURY.

Evidence in a prosecution for violation of the White Slave Traffic Act (Comp. St. § 8812) *held* sufficient to warrant submission of the case to the jury.

2. CRIMINAL LAW ⬤═338(3)—TRIAL—EVIDENCE.

That a defendant could not read or write English did not render letters purporting to have been written by him inadmissible, under instruction that they should be considered only if the jury found that they were written at the direction of and for defendant.

3. CRIMINAL LAW ⬤═823(2)—TRIAL—INSTRUCTIONS—CURE OF ERROR.

A recital by the judge to the jury of the evidence, although not in all respects correct, was not reversible error, where the jury were told that it was only his recollection, and not binding on them.

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Criminal prosecution by the United States against Chris Nokis. Judgment of conviction, and defendant brings error. Affirmed.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. R. Jones and George G. Yeaman, both of Sioux City, Iowa, for plaintiff in error.

F. A. O'Connor, U. S. Atty., of Dubuque, Iowa, and Seth Thomas, Asst. U. S. Atty., of Ft. Dodge, Iowa.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

HOOK, Circuit Judge. Chris Nokis was convicted and sentenced for violating the White Slave Traffic Act of June 25, 1910 (36 Stat. 825, c. 395 [Comp. St. § 8812]). He complains of instructions of the trial court and the admission of certain evidence, and also says that the evidence which was competent was not sufficient to warrant the verdict. The arguments in the brief upon the several questions are so intermingled that for the better understanding of them the facts which we think were fully and competently proved will be set forth. No testimony was given, except by witnesses produced by the government.

[1] The accused first met the young woman in the case at Aberdeen, S. D. She had recently separated from her husband and was a waitress in a restaurant which the accused patronized. Shortly afterwards she went to Cleveland, Ohio, and he went to Sioux City, Iowa. Just before her departure, he entertained her at dinner at a hotel in Aberdeen. She was in Cleveland about two months, and while there received several letters purporting to have been written and signed by him, to all of which she responded. The letters were offered in evidence, but, upon objection by his counsel, the court excluded them, because it appeared that the accused could not read or write the English language. Nevertheless, while on the witness stand, she testified from time to time, and without objection, to what was necessarily the purport of their correspondence in part. While at Cleveland she received $15 from the accused, also a telegram. The fact that she received a telegram was shown, but the contents were excluded by the court. Being advised that a railroad ticket to Sioux City awaited her at the station in Cleveland, she went there and got it. Her information was that the ticket came from the accused. Shortly before this two men appeared at the window of the railroad ticket office in Sioux City, one of whom, not the accused, acted as spokesman for the other, and arranged and paid for the delivery of the ticket to her at Cleveland. He represented that she was the sister of the other man. The latter was seen indistinctly, and was not identified as the accused. The young woman left for Sioux City, using the ticket. She had never been in that city before, and had no relatives, friends, or acquaintances there, except the accused. The day before her arrival the accused told the proprietress of the lodging house where he roomed with another man that he expected his wife, and he arranged with her for a separate room. He met the young woman at the station when she arrived. They went to his lodging house. He introduced her to the proprietress as his wife. In his presence she registered the accused and herself as husband and wife. They repaired to the room previously assigned him, he took his belongings there, and they occupied it together for at least two nights. The furnishing of the room implied the most intimate relations. He

paid for her occupancy of the room, and also for her board at a restaurant. Later he attempted to kill her, because she desired to leave him and return to Cleveland. The disclosure of their relations resulted from the disturbance and the calling in of a police officer. To say that the above was insufficient to warrant the jury in finding that the accused caused the young woman to be transported on the interstate journey from Cleveland, Ohio, to Sioux City, Iowa, for an immoral purpose, is to take a sophistical view that is out of touch with the actualities of life. It is true that the young woman testified on cross-examination that she went to Sioux City of her own accord, and that accused did not induce or entice her; also that she denied an inference from their occupancy of the same room. But under the circumstances the significance of their undisputed conduct was for the jury, and it is idle to say the conclusion was unwarranted.

[2] When on the witness stand the young woman was asked by counsel for the government whether prior to her arrival in Sioux City she had any arrangement or understanding with the accused with reference to her meeting him there. The record shows an affirmative answer by her, and then an objection by counsel to the question. The complaint that the court overruled the objection might be disposed of by observing that the objection came too late and that there was no motion to strike out the answer. But, aside from that, no prejudice resulted, even if the contents of the letters were thus indirectly brought into the case. That a meeting was arranged and understood between them appeared otherwise without reasonable doubt. Furthermore, there was enough in the evidence to have justified the court in admitting the letters themselves, with an instruction that the jury should consider them only if they found that they were written at the direction of and for the accused. Illiteracy does not exclude other proof of responsible authorship. The complaint of the admission of testimony of the young woman that the arrangement with the accused was made about two weeks before she left Cleveland is equally without merit.

[3]] It is urged that the court erred in reciting the undisputed facts in its charge to the jury. The recital was substantially correct except in one particular. The court said that the ticket agent at Sioux City heard his assistant in the office inquire of the man at the window as to who was buying the ticket, and that the latter named the accused. This does not appear in the bill of exceptions. It may be that the court got the fact from the railroad office record of the transaction, which was received in evidence, but is not set forth in the record before us. However this may be, the court carefully told the jury that what it said about the evidence was simply according to its recollection and that they were not bound by it. There was in this no reversible error.

The sentence is affirmed.