## SHAMA v. UNITED STATES. *
### No. 10972.

Circuit Court of Appeals, Eighth Circuit.
Jan. 31, 1938.

*Rehearing denied Feb. 28, 1938.

2

David F. Loepp, of Sioux City, Iowa (Fred H. Free, of Sioux City, Iowa, on the brief), for appellant.

William B. Danforth, Asst. U. S. Atty., of Mason City, Iowa (Edward G. Dunn, U. S. Atty., of Mason City, Iowa, on the brief), for the United States.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment upon a verdict of guilty under an indictment charging violation of the White Slave Act, Act of June 25, 1910, § 3, 18 U.S.C.A. § 399. The indictment charged that the appellant unlawfully persuaded and induced Bernice Templeton to be transported as a passenger in interstate commerce from Parsons, Kan., to Sioux City, Iowa, and that he caused her to be so transported with the intent and purpose that she should engage in the practice of prostitution.

At the close of all the testimony appellant moved for a directed verdict on the ground of insufficiency of the evidence to support a verdict of guilty. The overruling of this motion and the admission. over objection of certain evidence are assigned as errors.

Upon the question of the sufficiency of the evidence this court will inquire only whether there is substantial evidence to support the verdict; and in considering that question that view of the evidence will be taken, where, as here, the jury has found the appellant guilty, which is most favorable to the government. Galatas v. United States, 8 Cir., 80 F.2d 15; Marx v. United States, 8 Cir., 86 F. 2d 245.

When so considered, the evidence in brief is as follows:

The appellant, Shama, was the proprietor of the New Arcade Hotel, a 50-room hotel which occupied the second and remaining floors above of a building in Sioux City, Iowa. There were two parlors in the hotel in which beer was served, there being no other bar on the premises. During the latter part of July, 1936, two girls were employed there as entertainers, their duties being to serve beer to the customers, and talk, drink, and dance with them. These girls were paid a commission upon the beer they served. H. R. Mills was an employee of the hotel who acted as bar tender. One of the guests of the hotel at that time was Roy Coots, who was connected with a carnival then in Sioux City, and who was living with one of the carnival's dancing girls registered as his wife.

Mills testified that in the latter part of July, 1932, in a conversation between himself, Shama, and Coots, Shama said that the hotel needed more entertainers. Coots replied that he knew a girl down in Kansas who would like to work at the hotel. At Shama's direction, Mills wrote to the girl asking her to come from her home in Parsons, Kan., to Sioux City. The following day Shama asked Coots to wire the girl and see if she was coming. Mills then telephoned the telegraph company and ordered the following message to be sent, and charged to Shama:

"Wrote You The Other Day Regarding Job Here Stop If You Can Come Do So Immediately Stop Let Me Know Western Union If You Need Bus Fare
"Roy Coots"

The next day Coots received the reply: "Wire Train Fare Will Leave Tonight."

When Shama learned of this, he asked Mills to get the money and send the woman her ticket. Mills thereupon took the necessary amount out of the cash register and paid it to the local railroad agent, who notified the railroad at Parsons, Kan., to furnish the woman a ticket from Parsons to Sioux City. A day later the woman arrived at the hotel, met Shama, and was employed as an entertainer.

This woman, called as a witness for the government, testified that in the latter part of July, 1936, she received a letter from Sioux City signed by Roy Coots saying that the man who owned the hotel where he was staying would like to have her come up and go to work there. She said that she received another letter from Sioux City about that same time, but could not remember whose name was signed to it. She then told of receiving Coots' telegram, her reply to it, and her trip to Sioux City upon receiving word from the railroad that a ticket had been furnished for her.

She further testified:

"When I arrived in Sioux City I went to the New Arcade Hotel. I saw Mr. Mills and Mr. Shama about the same time. I talked to Mr. Shama something about the weather. He showed me to my room, and I told him I wanted to find out what terms and how I was working there. He told me how much my board and room would be a week and that out of every date I filled how much I would have to turn in to the desk. It was 50¢ out of every $1.50 date, and $1.00 out of every $3.00 date, and so on. My room and board was to be $5.00 a week.

"Q. Did you then go to work at the hotel? A. Yes, later on that evening I cleaned up and talked to Mr. Coots.

"Q. Just state what you did, what your work was? A. Well, kind of stay in the beer room and different men would come up, I would fill a date with them, sexual intercourse I guess you call it.

"They paid me for having sexual intercourse with them. I saved part of the money, spent part of it and had to turn part of it in to the desk. * * *"

It is contended first that there is no evidence that the purpose of Shama in inducing the woman to come to Sioux City was that she should engage in prostitution after her arrival. It is the inducement and

transportation, not the subsequent conduct, which constitutes the federal offense. "An immoral purpose first conceived at the end of the journey is not sufficient." Drossos v. United States, 8 Cir., 16 F.2d 833, 834.

■ There is evidence that Coots, who recommended the employment of this woman, had been a close friend of hers when he was a taxi driver in Parsons, Kan., and that she had at one time lived with him. By her own admission the woman had practiced prostitution in several cities prior to her employment in Sioux City. Her testimony to the conversation with Shama immediately upon her arrival at the hotel is evidence of Shama's intention at that time. Appellant's contention is that upon this evidence the jury was required as a matter of law to infer that at the time Shama sent for her he did not know what kind of a woman he was employing, or that he suddenly acquired his evil intention between the time he ordered Mills to buy the ticket and the time when she arrived at the hotel.

■ Appellant invokes the rule that when all of the substantial evidence is as consistent with innocence as with guilt it is the duty of the appellate court to reverse a conviction. Fulbright v. United States, 8 Cir., 91 F.2d 210; Haning v. United States, 8 Cir., 21 F.2d 508; Wright v. United States, 8 Cir., 227 F. 855.

■ The evidence in this case can be deemed consistent with innocence only if it be assumed that at the time of buying the railroad ticket Shama intended that the woman's employment be for no immoral purpose, an intention which he subsequently changed. It is well settled that in prosecutions for this offense the jury may infer intent from all the circumstances in evidence. Carey v. United States, 8 Cir., 265 F. 515; Hamilton v. United States, 8 Cir., 255 F. 511; Kelly v. United States, 9 Cir., 297 F. 212; Ghadiali v. United States, 9 Cir., 17 F.2d 236; Elrod v. United States, 6 Cir., 266 F. 55; Nokis v. United States, 8 Cir., 257 F. 413; Blackstock v. United States, 8 Cir., 261 F. 150; Kulp v. United States, 3 Cir., 210 F. 249; Beyer v. United States, 9 Cir., 251 F. 39 (C.C.A.9).

In Kelly v. United States, supra, where two women were transported from Seattle to Alaska to play the piano and sing in a place of amusement, evidence of the conduct of the parties at the end of the journey was held sufficient to sustain a conviction.

■ In the present case it is contended that there is a reasonable explanation for the interstate journey other than the intent that the woman engage in prostitution in Sioux City. Shama took the witness stand and testified that Coots had sent for the woman to come to Sioux City and dance in the carnival. Shama had loaned Coots the money for the ticket, and had been repaid. Then Coots found that he did not need another dancer in his carnival, and, after the woman's arrival, asked Shama to give her a job. This testimony is in direct conflict with the government's evidence, which, on this appeal, as pointed out, must be taken in its most favorable aspect. The only hypothesis of innocence consistent with the government's evidence is that Shama changed his intent during the time that elapsed between the morning when he procured the transportation and the following day when the woman arrived. Such a change of purpose may reasonably be inferred when the parties are traveling together; but here Shama in his testimony said nothing that would support such a theory in his case. There is no hypothesis of innocence which is consistent both with the government's evidence, taken in its most favorable aspect, and also with the story which Shama declares to be true. In order to have reached its verdict, the jury must have believed that Shama's story was wholly false. If appellant fabricated his story, that is a further fact which is inconsistent with innocence. Wilson v. United States, 162 U.S. 613, 621, 16 S.Ct. 895, 40 L.Ed. 1090. The jury, having rejected Shama's explanation of why the woman was brought to Sioux City, had before it no explanation as to why she was induced to come if not for an immoral purpose. The evidence clearly supports the inference that appellant had the intent at the time of arrival that the woman would practice prostitution. Appellant did not contend at the trial that such intent was acquired while the woman was en route. We cannot now say that the jury was required, as a matter of law, to conclude that such was the fact. The jury's finding, therefore, that appellant had the unlawful intent at the time the journey began is supported by substantial evidence, and may not be disturbed on appeal.

■ The next point argued by appellant is that the content of the letter which

the woman testified she received from Coots was incompetent, hearsay, and not binding upon the defendant, and should therefore have been excluded. From the testimony of Mills the jury might properly infer that the letter had been written at the request of Shama. Letters written at the direction of the accused are admissible against him. Nokis v. United States, supra.

■ Appellant's next contention is that the trial court improperly refused to allow the clerk in charge of the hotel's books to explain the significance of the name "Coots" and the word "paid" which appear in the hotel register just above the name "B. Davis," which was the name by which the woman from Kansas had registered.

■ The witness was, however, allowed to testify that the custom of the hotel was that when a room was paid for by some one other than the occupant the word "paid" and the name of the person paying were placed in the register. For the clerk to have testified that the insertion of Coots' name had any peculiar significance would have been improper hearsay. Appellant also complains that, when the witness was asked if she recognized this entry in the register as the handwriting of Coots, the question was objected to as incompetent, irrelevant, and immaterial, and the objection was sustained. The ruling on this objection is not reviewable in this court because no offer of proof was made, and we are not advised as to what the answer would have been. Flowers v. United States, 8 Cir., 83 F.2d 78, 84; Cropper v. Titanium Pigment Co., 8 Cir., 47 F.2d 1038, 1042, 78 A.L.R. 737; Thompson v. United States, 8 Cir., 65 F.2d 897, 899; Proechel v. United States, 8 Cir., 59 F.2d 648, 650; Federal Surety Co. v. Standard Oil Co., 8 Cir., 32 F.2d 119; Federal Intermediate Credit Bank v. L'Herisson, 8 Cir., 33 F.2d 841.

■ A policeman in his testimony used the word "hustled." He was asked by counsel for the government to tell what was meant by that word. Over objection he answered, "Prostitution." It does not appear that in the use of this term the witness was directly quoting any one. Rather he was using his own expression.

No reason has been suggested why it was improper for the witness to substitute another word for the slang term so as to make his meaning clearer.

■ Next, appellant argues that the court erred in admitting testimony concerning the purchase of the railroad ticket because the alleged authority of Mills to purchase the ticket rested solely upon his own testimony that he was acting for Shama. The rule cited by appellant, that "the declarations of an agent are not admissible to prove the fact of agency," refers exclusively to declarations made by the agent outside the courtroom. It is well settled that, when on the witness stand, the agent may testify what his principal told him to do, and by such testimony establish the fact of the agency. Attleboro Mfg. Co. v. Frankfort Ins. Co., 1 Cir., 240 F. 573; Joslyn v. Cadillac Automobile Co., 6 Cir., 177 F. 863.

■ Finally, appellant contends that the trial court unduly restricted the cross-examination of the woman wherein she testified that she had been induced to come to Sioux City for an immoral purpose. Counsel for appellant asked her whether she had not told one of the employees of the hotel that she had for a time lived with Coots. The objection of the government that this was immaterial and not proper cross-examination was sustained. Objection was also made and sustained to the questioning by appellant's counsel as to whether she had lived at the hotel with a man by the name of Smith. The purpose of these questions, appellant now states, was to show that the woman had another purpose in coming to Sioux City, and to discredit her testimony. However, the hotel employee was allowed to testify as to the conversation in which the woman had told of having lived with Coots; and the woman herself testified that she had been engaged in prostitution previously. The fact that she may have lived with Smith in Sioux City cannot be said to be of any weight in destroying the inference that she came to Sioux City to engage in prostitution, nor in adding to the discredit of such a witness. The scope of the cross-examination is within the sound discretion of the trial court. Rea v. Missouri, 17 Wall. 532, 84 U.S. 532, 21 L.Ed. 707.

We find no error in the record. The judgment appealed from is affirmed.