**DAVIS v. R.K.O. RADIO PICTURES, Inc.**

No. 14262.

United States Court of Appeals
Eighth Circuit.

Oct. 18, 1951.

Tralles, Hoffmeister & Gilpin, Fred J. Hoffmeister and Fred C. Schillinger, all of St. Louis, Mo., on the brief, for appellant.

James A. Finch, Cape Gerardeau, John H. Lashly and Lashly, Lashly, & Miller, all of St. Louis, Mo., and Finch & Finch, Cape Gerardeau, Mo., on brief, for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant against appellee to recover damages for distributing and exhibiting an allegedly libel-

ous motion picture. The parties will be referred to as they appeared in the trial court. As only a fragment of the testimony is preserved in this record it seems important to consider what facts were admitted by the pleadings.

It was alleged in plaintiff's complaint that the defendant in its course of business filmed, produced and exhibited a motion picture entitled "Fighting Father Dunne," which it is still distributing and exhibiting throughout the United States and Canada, including the State of Missouri and the City of St. Louis; that the picture and the theme of the story depicted is based on the founding and maintenance of a newsboys' home in the City of St. Louis, Missouri, by one Peter J. Dunne, a Catholic priest, and the scenes and locations are portrayed in the City of St. Louis; that plaintiff, usually known as Matt Davis, on or about December 29, 1906, when he was thirteen years of age and a newsboy in St. Louis, became a resident of the Father Dunne's Newsboys' Home, where he remained until about December 19, 1910, which was during the time portrayed in the picture; that while plaintiff was a resident in said home he presented no serious behavior problems and never violated the law; that in the story and the picture "Fighting Father Dunne", one of the chief characters, is a boy known as Matt Davis, about thirteen years of age, an inmate of the Father Dunne's Newsboys' Home; that this boy is depicted as a juvenile delinquent, guilty of the commission of the crimes of malicious destruction of property; larceny, burglary and finally the murder of a police officer; that due to the fact that plaintiff did reside in Father Dunne's Newsboys' Home at the time portrayed in the picture persons viewing and hearing the picture reasonably recognized and identified the character "Matt Davis" as representing and portraying plaintiff; that such portrayal was without the knowledge, consent or acquiescence of plaintiff; that defendant knew or by the exercise of reasonable care should have known that the plaintiff had resided in Father Dunne's Newsboys' Home when he was a boy between thirteen and fifteen years of age and at the time portrayed in said picture, but defendant in

reckless disregard of the rights of plaintiff produced, distributed and exhibited the picture, falsely charging him with the crimes mentioned, whereas plaintiff has never been guilty of the commission of any crime. It was then charged that the acts of defendant in producing and exhibiting said picture were libelous and malicious, subjecting plaintiff to public notoriety, contempt and ridicule and depriving him of the benefits of public confidence and social stability. There were other allegations with reference to plaintiff's damages which were alleged to be in the sum of $50,000.00, and he asked punitive damages in the sum of $250,000.00.

The defendant in its answer admitted diversity of citizenship between plaintiff and itself, admitted the production and distribution of the picture "Fighting Father Dunne," admitted that the picture is still being exhibited as alleged in plaintiff's complaint, admitted that the picture deals in part with some historical facts relating to the founding and maintenance of a newsboys' home in the City of St. Louis, Missouri, by a Catholic priest named Peter J. Dunne. It specifically denied that the picture or any character portrayed therein depicts or in any way refers to or that it can reasonably be regarded as depicting or in any way referring to the plaintiff. It denied generally the other allegations of the complaint.

The case was tried to a jury resulting in a general verdict in favor of the defendant. The sufficiency of the evidence to sustain the verdict is not challenged and the record contains only the oral testimony of one witness. We gather from the instructions that there was other evidence produced but it is not preserved in the record before us. From the judgment of dismissal entered pursuant to the verdict plaintiff has appealed, assigning as error: (1) the ruling of the court sustaining defendant's objection to the admission of certain testimony of the witness William F. Glynn offered on behalf of plaintiff, and (2) the giving of a certain instruction to the jury which will hereinafter be set forth.

The record shows that as a part of plaintiff's evidence the film as shown and ex-

hibited was prefaced with a statement to the effect that it was a R.K.O. production and gave the names of the cast and the various persons who participated in making the picture. The words, "Produced by Phil L. Ryan" and "Directed by Ted Tetzlauf," appeared on the screen together with the names of others participating in making the film. Plaintiff contends that this testimony established the fact that Phil L. Ryan as producer was the agent for defendant. The witness William F. Glynn testified that he was superintendent of the Newsboys' Home and had collaborated to a greater or lesser extent in the preparation of the picture and had conferred with Phil L. Ryan, the alleged producer. He testified that he had occasion to write Phil L. Ryan about Matt Davis after he had read an article appearing in the St. Louis Globe Democrat on April 26, 1947; that he received no answer to his letter but that he later saw Ryan in St. Louis at the time of the prevue of the picture, at which time Ryan admitted he had received the letter written by the witness but that the picture, however, had then been finished. The witness was then asked:

"Q. When Mr. Phil Ryan came here, Father Glynn, before this prevue, did you discuss with him the use of the name 'Matt Davis' in this picture?

"Judge Finch: If the Court please, we object to that because his discussion with him wouldn't have any relation at all to the merits of this case. It would be hearsay.

"The Court: Be overruled, the court will let him answer.

"A. Yes, I discussed that with him.

"Q. What was said by him and what was said by you?

"Judge Finch: We renew our objection, your Honor.

"A. Well, I have to bring in—

"The Court: Wait just a minute."

Following this the jury was excused and after the jury was returned the following proceedings were had in the hearing and presence of the jury:

"The Court: You may proceed.

"Q. Father Glynn, did you have anything further to do with either the production or the showing of this picture? A. No."

It is now here urged that the court erred in excluding testimony as to the conversation had between the witness Glynn and Phil Ryan as to the use of the name "Matt Davis." It may first be observed that the record does not affirmatively show that this testimony was excluded. It was objected to. This was followed by the recess and what occurred during the recess does not appear. Following the recess the question was not again asked of the witness and no direct ruling was secured as to the admissibility of such testimony. But quite aside from this we think proper foundation was not laid for the admission of this testimony. The witness, referring to Phil L. Ryan said: "Technically I don't know what his duties were with reference to the making of this picture, but he is an independent producer. I understood he was producing this under RKO and as soon as the production was over his job ceased; he was independent, he wasn't permanently on their roll."

The evidence sought to be elicited was not part of the res gestae. The witness was not a general agent and the communication with him was after the picture was finished. While he had something to do with producing the picture there was nothing to indicate that he had anything to do with its distribution or exhibition and it was the distribution and exhibition of the picture of which plaintiff complains. The witness could not, after having completed his work for defendant, make admissions or statements binding on it. Gosney v. Metropolitan Life Ins. Co., 8 Cir., 114 F.2d 649, and Missouri cases therein cited. But there is another reason why this alleged error can not be urged by plaintiff. There was no offer of proof to indicate the substance of the testimony which the witness if permitted to testify would give. Federal Surety Co. v. Standard Oil Co., 8 Cir., 32 F.2d 119, 120; Cropper v. Titanium Pigment Co., 8 Cir., 47 F.2d 1038, 1042, 48 A.L.R. 737; Shama v. United States, 8 Cir., 94 F.2d 1, 5. In Federal Surety Co. v. Standard Oil Co., supra, in an opinion by the late Judge Booth, it is said: "The rule

is well established that in the absence of an offer to prove there can be no reversal for the exclusion of testimony."

In Cropper v. Titanium Pigment Co., supra, referring to this question we said: "This rule requiring a party who seeks to review the ruling of a court on rejection of testimony to make a proffer of proof is not a mere arbitrary technical rule, but a practical one, very essential to the orderly administration of justice. For instance, the witness Bush was asked what his physical condition was when he finally left defendant's employment. If this court were permitted to decide as an abstract proposition that the question was a proper one, and should reverse the case for that reason, and it were remanded for a new trial, and the witness should then testify that he was in perfect physical condition when he left the work, the futility of a reversal would appear, and a manifest injustice would have been done the defendant."

In Shama v. United States, supra, where we were asked to review a ruling sustaining objection to testimony, it is said: "The ruling on this objection is not reviewable in this court because no offer of proof was made, and we are not advised as to what the answer would have been."

The same rule prevails in the State of Missouri. Robison v. Chicago, Great Western R. Co., Mo.App., 66 S.W.2d 180. We conclude that the contention of plaintiff as to this phase of the case is wholly without merit.

■■■■ Plaintiff contends that the court erred in charging the jury that "although you may believe and find from the evidence that some persons who saw the screen play understood the screen character Matt Davis to refer to plaintiff, yet the fact that such persons did so understand it is not conclusive upon the jury, but from all the evidence, including the screen play as a whole, you will determine whether in your opinion the screen character Matt Davis was capable of being reasonably understood to refer to plaintiff." This paragraph of the instruction was excepted to by plaintiff "for the reason that it is a comment on the testimony of certain witnesses, that it singles

out and unduly emphasizes the testimony of certain witnesses who testified to the things set forth in that charge." As we have before observed, the testimony is not before us. The charge, which must be considered as a whole, was, we think, a very carefully worded one which reflected no opinion as to the facts and in a very understandable manner told the jury as to the applicable law. The jury was told that it was the purpose of the court to express no opinion on the facts and that it was the province of the jury, and of the jury alone, to determine the facts. It is not contended that the instruction excepted to was an incorrect one so far as it announced the substantive law and we think it was a correct statement of the law applicable to what appears to have been the testimony. The issue was whether persons who knew or knew of the plaintiff could *reasonably* have understood the exhibited picture to refer to him. The Supreme Court of Missouri, in Coats v. News Corporation, 355 Mo. 778, 197 S.W. 2d 958, 961, speaking through Judge Hyde, said:

"The Restatement makes the following comment: 'If the communication is reasonably understood by the person to whom it is made as intended to refer to the plaintiff, it is immaterial that the defamer did not intend to refer to him. It is not enough, however, that the defamatory matter be actually understood as intended to refer to the plaintiff; such interpretation must be reasonable in the light of all the circumstances. * * *'

"Thus the question for the court, in ruling on the request for a directed verdict in such a case is: Could the article be capable of being reasonably understood to apply to plaintiff? If the court decides that it reasonably could be so understood, then the questions to be submitted to the jury are: would the article *reasonably* be interpreted, by some of those who read it, as referring to plaintiff?; and, did any so interpret it?" (Italics supplied.)

Manifestly it would not be sufficient to establish a cause of action that someone said he understood that the character depicted as Matt Davis referred to plaintiff. The instruction complained of simply told the

jury that such testimony was not conclusive, not that it was not entitled to consideration. It was for the jury to determine from all the evidence and circumstances whether such a construction might reasonably be made. It is, however, urged that the instruction was objectionable because it constituted a comment upon the testimony of certain witnesses. The instruction did not single out any witness and no witnesses are named and under the Federal practice the trial judge may in his charge comment on the evidence fairly and impartially, more clearly to define the issues and assist the jury in reaching a correct conclusion, and it is the law that so long as the judge advises the jury that they are the sole judges of the facts under the evidence, as the trial judge here did, it is proper for him to make reference to the evidence by way of comment or otherwise. We think the charge to the jury was an exceptionally fair one and was not subject to the criticism here urged.

The judgment appealed from is therefore, affirmed.