11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Allied Marketing Group,
Inc. d/b/a Sweepstakes Clearinghouse

Appellant

Vs.      
            No. 11-01-00240-CV B Appeal from Dallas County

Paramount Pictures Corporation; Paramount
Stations Group, Inc.; 

Joe Tobin; Fernando Martinez; Chuck Whitlock;
Barry Nolan;

Lisa Gregorisch; and
Diane Dimond 

Appellees

 

Allied
Marketing Group, Inc. d/b/a Sweepstakes Clearinghouse (Allied) appeals from the
trial court=s order granting a traditional summary
judgment and a no-evidence summary judgment in favor of Paramount Pictures
Corporation; Paramount Stations Group, Inc.; Joe Tobin; Fernando Martinez;
Chuck Whitlock; Barry Nolan; Lisa Gregorisch; and Diane Dimond (collectively
referred to as Paramount).  Allied
alleged that Paramount and other defendants defamed it in a Hard Copy
television show segment about a Asweepstakes scam.@[1] 
Because we conclude that Paramount failed to meet its traditional
summary judgment burden and that Allied met its no-evidence summary judgment
burden, we reverse the trial court=s summary judgment and remand the cause to the trial court for further
proceedings.  








On
February 8, June 17, and July 29, 1996, Hard Copy aired a segment about
a sweepstakes scam.  In the segment, Hard
Copy producer Chuck Whitlock, accompanied by a video camera operator, went
to a number of homes.  When people
answered their doors, Whitlock told them that he was with Sweepstakes Clearing
House and that they had won $10,000 in a sweepstakes contest. He showed them ASweepstakes Clearing House@ checks made out for $10,000.  He then told the Awinners@ that they had to pay $250 in taxes before he could give them their
checks.  Each Awinner@ wrote a $250 check, payable to the I.R.S., as directed by Whitlock.
Whitlock then returned the $250 checks to the Awinners@ and informed them that he was doing a
national consumer awareness show for Hard Copy.  Whitlock stated that A[t]his is a con that=s perpetrated all over the country from coast
to coast.@  The
segment=s narrator stated that con-artists cash the Aincome tax@ checks through a bogus company set up with the initials I.R.S.  A Hard Copy anchor referred to it as
a Anationwide scam.@ 

Paramount
intended to use a fictional company name in connection with the sweepstakes
company depicted in the segment and thought that ASweepstakes Clearing House@ was a fictional name.  However,
unknown to Paramount, Allied had been using the name ASweepstakes Clearinghouse@ since 1984 in connection with a direct mail
offer business.  Sweepstakes
Clearinghouse=s stated goal Ais and always has been to promote, via direct mail, the sale of brand
name products at discount prices, in connection with various sweepstakes for
both cash and merchandise.@  It sends out millions of
mailers a year to consumers and has conducted various kinds of sweepstakes
contests, including a sweepstakes contest that has many similarities to the Ascam@ depicted on the Hard Copy segment.           

This is
Allied=s second appeal from a summary judgment in
this matter.  In the first appeal,
Allied complained that the trial court erred in concluding that Allied was a
public figure for the purposes of its defamation claim.  In an unpublished opinion, the Dallas Court
of Appeals held that Allied was not a public figure and, therefore, reversed
the summary judgment and remanded the cause to the trial court for further
proceedings.  See Allied Marketing
Group, Inc. v. Paramount Pictures Corporation, No. 05-99-00165-CV, 2000 WL
283834, at *3 - *4 (Tex.App. - Dallas, March 17, 2000, pet=n den=d)(not designated for publication). 









After
remand, Paramount moved for traditional and no-evidence summary judgments,
asserting that Allied=s
defamation claim failed because:  (1)
the Hard Copy segment was not Aof and concerning@ Allied; (2) even if the Hard Copy segment was Aof and concerning@ Allied, the segment was a Afictional@ work, and Paramount did not intend to refer to Allied in the segment;
and (3) even if the segment was Aof and concerning@ Allied, the segment did not defame Allied.  Paramount further asserted that, because the defamation claim
failed, Allied=s other claims also failed.  In its first two appellate issues, Allied
complains (1) that the trial court erred in granting summary judgment on its
defamation claim based on conclusions that the Hard Copy segment was not
Aof and concerning@ Sweepstakes Clearinghouse or defamatory and
(2) that the trial court erred in granting summary judgment on its other
claims.[2]

The trial
court did not specify the grounds for summary judgment in its order.  Therefore, we will affirm the summary
judgment if any of the theories advanced in Paramount=s motion for 
summary judgment are meritorious. 
Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.1989).

We will apply the well-recognized standard of review
for traditional summary judgments. We must consider the summary judgment
evidence in the light most favorable to the non-movant, indulging all
reasonable inferences in favor of the non-movant, and determine whether the
movant proved that there were no genuine issues of material fact and that it
was entitled to judgment as a matter of law. 
Nixon v. Mr. Property Management Company, Inc., 690 S.W.2d 546
(Tex.1985); City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671
(Tex.1979).    

The trial
court must grant a no-evidence motion for summary judgment unless the
non-movant produces evidence that raises a genuine issue of material fact on
the challenged element of his claim or defense.  TEX.R.CIV.P. 166a(i). We review the evidence presented in
response to a motion for a no-evidence summary judgment in the same way that we
review the evidence presented in support of or in response to a motion for
traditional summary judgment, and we accept as true evidence favorable to the
non-movant and indulge every reasonable inference and resolve all doubts in
favor of the non-movant.  Hight v.
Dublin Veterinary Clinic, 22 S.W.3d 614, 619 (Tex.App.-Eastland 2000, pet’n den’d).  A no-evidence summary judgment is improper
if the non-movant presents more than a mere scintilla of probative evidence to
raise a genuine issue of material fact on the challenged element.  Hight v. Dublin Veterinary Clinic, supra at
619.  More than a mere scintilla of
evidence exists when the evidence rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions.  Hight v. Dublin Veterinary Clinic, supra at
619 (citing Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706
(Tex.1997), cert. den’d, 523 U.S. 1119 (1998)).           








The
plaintiff in a defamation case must establish four elements:  (1) the defendant published a factual
statement; (2) that was defamatory; (3) and concerned the plaintiff; (4) while
acting with negligence, if the plaintiff was a private individual, regarding
the truth of the statement.  ABC, Inc.
v. Shanks, 1 S.W.3d 230, 234 (Tex.App. B Corpus Christi 1999, pet=n den=d); Provencio v. Paradigm Media, Inc., 44 S.W.3d
677, 680-81 (Tex.App. B El
Paso 2001, no pet=n).  To satisfy the third element, the plaintiff
must show that the allegedly defamatory publication was Aof and concerning@ it. 
It is not necessary that the plaintiff be named in the publication.  Newspapers, Inc. v. Matthews, 339 S.W.2d
890, 894 (Tex.1960).  A publication is Aof and concerning@ the plaintiff if persons who knew and were
acquainted with the plaintiff understood from viewing the publication that the
allegedly defamatory matter referred to the plaintiff.  Newspapers, Inc. v. Matthews, supra.  The issue depends on whether persons who knew
or knew of the plaintiff could have reasonably understood that the publication
referred to the plaintiff.  See Davis v.
R.K.O. Radio Pictures, Inc., 191 F.2d 901, 904 (8th Cir. 1951).  Because the test is based on the reasonable
understanding of the viewer of the publication, it is not necessary for the
plaintiff to prove that the defendant intended to refer to the plaintiff.  See Ruzicka v. Conde Nast Publications,
Inc., 999 F.2d 1319, 1322 (8th Cir. 1993); New England Tractor-Trailer Training
of Connecticut, Inc. v. Globe Newspaper Company, 480 N.E.2d 1005, 1009
(Mass.1985).  The RESTATEMENT (SECOND)
OF TORTS ' 564 (1977) provides:  AA defamatory communication is made concerning the person to whom its
recipient correctly, or mistakenly but reasonably, understands that it was
intended to refer.@








Thus, the Aof and concerning@ issue is whether persons viewing the Hard
Copy segment who knew of Sweepstakes Clearinghouse could reasonably have
understood that the segment referred to Sweepstakes Clearinghouse.[3]  We view the summary judgment evidence in the
light most favorable to Allied to make this determination.  In the introduction to the segment, a Hard
Copy anchor stated that AHard Copy goes undercover to expose the great sweepstakes scam.@  The Hard
Copy Ascam@ sweepstakes was similar to actual sweepstakes contests in which checks
are delivered to the winners at their homes. 
During the segment, Whitlock told two of the Awinners@ that he was with ASweepstakes Clearing House@ and showed all three Awinners@ $10, 000 ASweepstakes Clearing House@ checks.  After the Awinners@ gave him their $250 checks payable to the I.R.S., Whitlock informed
them that he was doing a national consumer awareness show for Hard Copy.  Whitlock stated that Athis is a con that=s perpetrated all over the country from coast
to coast.@ 
Whitlock testified that he wanted the Hard Copy Ascam@ to be Aclose to the real scams that would take place
in the real world.@  A Hard Copy anchor referred to the Ascam@ as a Anationwide scam.@  The
segment did not indicate that ASweepstakes Clearing House@ was a fictional company.

The
summary judgment evidence established that Allied has been using the name
Sweepstakes Clearinghouse since 1984. 
Sweepstakes Clearinghouse sends millions of mailings a year to consumers
attempting to sell various products.  It
also conducts various direct mail sweepstakes contests offering contestants
chances to win cash and merchandise. 
Many of the mailed items include the Sweepstakes Clearinghouse
name:  sweepstakes entry forms,
envelopes, credit vouchers, award checks, and merchandise shipment
materials.  One of its sweepstakes
contests is similar to the sweepstakes Ascam@ depicted on the Hard Copy
segment.  About once a year for the last
ten years, Sweepstakes Clearinghouse has conducted a sweepstakes contest with a
grand prize of $10,000.  Sweepstakes
Clearinghouse has awarded the $10,000 grand prizes by personally delivering
$10,000 checks with the Sweepstakes Clearinghouse name on them to the winners
at their homes. 








 The above summary judgment evidence
established that Hard Copy=s fictional company name, ASweepstakes Clearing House,@ was identical to that of the real company, Sweepstakes
Clearinghouse.  Hard Copy used
the name in connection with a depiction of a sweepstakes Ascam.@ Sweepstakes Clearinghouse is actually in the business of conducting
sweepstakes contests, one of which is very similar to Hard Copy=s Ascam@ sweepstakes.  Hard Copy did not indicate to its viewers that ASweepstakes Clearing House@ was a fictional company.  Given that Hard Copy used an
identical company name and used the name in connection with the type of
business conducted by the actual company, we find that Hard Copy=s viewers who knew of Sweepstakes
Clearinghouse through receiving mailings from it could have reasonably
understood that the Hard Copy segment referred to it.  As such, summary judgment was not proper on
the Aof and concerning@ issue.      Paramount
argues that, because the segment was Aan obvious work of fiction,@ no viewer could have reasonably understood that it referred to
Sweepstakes Clearinghouse.  Paramount
relies on a number of authorities to support its contention.  See Middlebrooks v. Curtis Publishing
Company, supra at 143; Clare v. Farrell, 70 F. Supp. 276 (D. Minn. 1947);
Aguilar v. Universal City Studios, Inc., 174 Cal. App. 3d 384, 219 Cal. Rptr.
891 (1985). The Middlebrooks court explained that Anames of characters portrayed in...short
stories...and other obvious works of fiction are normally understood by all
reasonable men as not intended to depict or refer to any actual person.@ 

This case
is distinguishable.   While Paramount
intended to use a fictional company name and did depict a Ascam@ as opposed to an actual sweepstakes contest,  these facts do not make the segment an Aobvious work of fiction.@ 
Paramount considered Hard Copy to be a news show.  Hard Copy identified the segment as
an Aundercover@ report about a Anationwide scam.@  Whitlock testified that the
segment was a Anews report on a particular type of scam.@ 
These statements do not describe a work of fiction.  They describe a news report about an actual
problem: sweepstakes scams.  Viewed in
its entirety, the segment was not a fictional work. 

Additionally,
the many similarities between the fictional ASweepstakes Clearing House@ depicted in the segment and Sweepstakes Clearinghouse distinguish this
case from Paramount=s
authorities.  Paramount ignores the
similarities in arguing that A[b]ecause the only similarity here is the incidental use of the name
Sweepstakes Clearinghouse any conclusion that the fictional broadcast portrayed
Allied is per se unreasonable.@  The name was not the only
similarity.  The segment used ASweepstakes Clearing House@ in connection with the very type of business
that Sweepstakes Clearinghouse conducted, sweepstakes contests.  Additionally, Hard Copy=s Ascam@ was similar to an actual sweepstakes contest
conducted by Sweepstakes Clearinghouse in which a check was hand-delivered to
the winner at the winner=s home.  Even if the segment was
considered to be fiction, Hard Copy=s viewers could have reasonably concluded that the segment referred to
Sweepstakes Clearinghouse.                









Allied
presented deposition testimony of a Hard Copy viewer who understood that
the segment referred to Sweepstakes Clearinghouse.  When the viewer heard the name ASweepstakes Clearing House@ in the segment, he remembered receiving a letter from Sweepstakes
Clearinghouse the day before.  He looked
through his trash and found the letter. 
He thought the segment showed Sweepstakes Clearinghouse committing a
fraudulent activity.  He filed a
complaint with the police against Sweepstakes Clearinghouse.  Paramount argues that this viewer=s understanding was Aunreasonable@; however, the similarities between Hard Copy=s ASweepstakes Clearing House@ and the actual Sweepstakes Clearinghouse defeat Paramount=s argument.             

Allied
also presented evidence showing that Sweepstakes Clearinghouse=s customer response rates to its mailings
declined and its profits declined after the Hard Copy broadcasts.  This evidence was relevant to the issue of
whether ordinary viewers understood that the segment referred to Sweepstakes
Clearinghouse.  Viewing this evidence in
the light most favorable to Allied, it supports Allied=s claim that at least some of Hard Copy=s viewers understood that the segment
referred to Sweepstakes Clearinghouse.  

Paramount
asserted that it was entitled to summary judgment, even if the segment was Aof and concerning@ Allied, because the segment was a Afictional@ work and Paramount did not intend to refer to Allied in the
segment.  This argument fails for two
reasons.  First, the segment was not
fictional.  Second, the plaintiff in a
defamation case is not required to prove that the defendant intended to refer
to it.  Rather, an allegedly defamatory
publication is Aof and concerning@ a plaintiff B even in cases involving fictional works B if persons who knew or knew of the plaintiff could reasonably have
understood that the fictional character was a portrayal of the plaintiff.  See Middlebrooks v. Curtis Publishing
Company, supra at 142; Fetler v. Houghton Mifflin Company, supra at 651; Davis
v. R.K.O. Radio Pictures, Inc., supra at 904.                             








Paramount
also asserted that it was entitled to summary judgment, even if the segment was
Aof and concerning@ Allied, because the segment did not defame
Allied.  Whether a publication is
capable of a defamatory meaning is initially a question of law for the
court.  Turner v. KTRK Television, Inc.,
38 S.W.3d 103, 114 (Tex.2000)(citing Musser v. Smith Protective Services, Inc.,
723 S.W.2d 653, 655 (Tex.1987)).  To
determine this issue, the trial court construes the allegedly defamatory
publication as a whole in light of surrounding circumstances based upon how a
person of ordinary intelligence would perceive the publication.  Turner v. KTRK Television, Inc., supra; Carr
v. Brasher, supra at 570; Musser v. Smith Protective Services, Inc.,
supra.  If the publication is ambiguous
or of doubtful import, the jury must determine the publication=s meaning and the effect the publication has
on an ordinary reader.  If a defamatory
meaning may exist, then the publication is considered ambiguous, and the
court must allow the jury to determine whether an ordinary reader would
perceive the statement as defamatory. 
Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.,
708 F.2d 944, 948 (5th Cir. 1983)(applying Texas law); Musser v. Smith
Protective Services, Inc., supra.  Thus,
if a publication is capable of two interpretations, one of which is defamatory,
the trial court is required to submit the publication to the jury.  Golden Bear Distributing Systems of Texas,
Inc. v. Chase Revel, Inc., supra at 948. 

Therefore,
the issue is whether the Hard Copy segment was reasonably capable of a
defamatory meaning.  The Hard Copy
segment used Sweepstakes Clearinghouse=s name in connection with a sweepstakes Ascam.@ 
Sweepstakes Clearinghouse actually conducted sweepstakes contests, one
with many similarities to the Ascam@ depicted in the segment.  While Paramount asserts that the segment was
not defamatory because it only commented about con-men Awho adopt the trappings of legitimate
sweepstakes companies as a means of perpetrating fraud,@ the segment did not indicate B by statements or otherwise B that ASweepstakes Clearing House@ was a legitimate company.  Nor
did the segment clearly indicate B by statements or otherwise B that it was intended only as a comment about con men or that it was
not intended as a negative comment about ASweepstakes Clearing House.@  Paramount relies on a
statement in the segment that Athe con-artist outfits a van to look like the prize van everyone sees
on the TV commercials for those legitimate sweepstakes.@  This
statement was accompanied by video of a van with the Publishers Clearing House
name on it.  However, the segment did
not associate any other sweepstakes company, by name or otherwise, with Alegitimate sweepstakes.@








Paramount=s interpretation of the segment is not the
only possible interpretation. One reasonable interpretation of the segment is
that Sweepstakes Clearinghouse was a sham company that Acon men@ created for the purposes of engaging in sweepstakes scams.  As such, ordinary viewers of the segment
could reasonably perceive that Sweepstakes Clearinghouse was engaging in a
fraudulent activity B a
sweepstakes scam.  As set forth above,
Allied presented evidence that a viewer did perceive that Sweepstakes
Clearinghouse was engaging in the scam. 
Statements that would ordinarily tend to injure a plaintiff=s business reputation, resulting in financial
injury, are defamatory.  Granada
Biosciences, Inc. v. Forbes, Inc., 49 S.W.3d 610, 616 (Tex.App. B 
Houston [14th Dist.] 2001, pet=n den=d). 
Statements charging a sweepstakes company with engaging in sweepstakes
fraud would ordinarily tend to injure the company=s business reputation and result in financial injury to it.  The segment is reasonably capable of a
defamatory meaning.

The trial
court erred in granting summary judgment on Allied=s defamation claim.[4]  Because the trial court granted summary
judgment on Allied=s
other claims on the ground that Allied=s defamation claim failed, the trial court erred in granting summary
judgment on the other claims.  We
sustain Allied=s first and second issues.  

Paramount
raised an additional ground for summary judgment in its reply brief to Allied=s response to the motion for summary
judgment.  Paramount asserted that the
Dallas Court of Appeals decided the Aof and concerning@ issue against Allied in the earlier appeal and that, therefore, the Alaw of the case@ precluded Allied=s claim that the segment was Aof and concerning@ Sweepstakes Clearinghouse.  The
Alaw of the case@ doctrine provides that questions of law decided in an appeal to a
court of last resort govern that case throughout its subsequent stages.  Hudson v. Wakefield, 711 S.W.2d 628, 630
(Tex.1986); Russell v. City of Bryan, 919 S.W.2d 698, 703-04 (Tex.App. - Houston
[14th Dist.] 1996, writ den=d).  

The issue
in the first appeal was whether Allied was a public figure for the purpose of
its defamation claim.  Allied Marketing
Group, Inc. v. Paramount Pictures Corporation, supra at *2.  The Dallas Court of Appeals explained that,
in defamation cases, if the plaintiff is a public official or a public figure,
the plaintiff must establish a higher degree of fault to prove defamation.  The plaintiff must prove that the defendant
acted with actual malice, that is, with knowledge that the defamatory
publication was false or with reckless disregard of whether it was false or
not.  Allied Marketing Group, Inc. v.
Paramount Pictures Corporation, supra at *2.      








Whether a
party is a public figure is a matter of constitutional law for the court to
decide.  Allied Marketing Group, Inc. v.
Paramount Pictures Corporation, supra at *2. 
The court explained that there are two types of public figures: general
purpose and limited purpose public figures. 
The court concluded that Allied was neither type of  public figure: AWe hold the summary judgment evidence
established as a matter of law that Allied was neither a general purpose or
limited purpose public figure.@  Allied Marketing Group, Inc.
v. Paramount Pictures Corporation, supra at *3 B *4.  In support of its Alaw of the case@ argument, Paramount relies on statements that the Court made during
its analysis of the third element of the test for determining whether a party
is a limited purpose public figure: A[T]he segment had nothing to do with Allied and depicted a fictional
door-to-door sweepstakes scam.@  Allied Marketing Group, Inc.
v. Paramount Pictures Corporation, supra at *3.  The court made these statements in the context of determining
that Paramount could not show that the segment was germane to Allied=s participation in a controversy, the third
element of the limited purpose public figure test.  Because Paramount did not know that Allied existed, Paramount
could not do a segment about Allied. 
Thus, from Paramount=s perspective, Athe segment had nothing to do about Allied.@ 
Because Athe segment depicted a fictional door-to-door
sweepstakes scam,@
Paramount could not establish that it was germane to Allied=s participation in an actual
controversy.  Thus, Paramount could not
establish that Allied was a limited purpose public figure.   

The court
did not decide the Aof and
concerning@ issue; the issue was not even before the
court.  The  Aof and concerning@ issue and the third element of the limited
purpose public figure test involve different inquiries.  The Aof and concerning@ inquiry is whether viewers of the publication understood that it
referred to the plaintiff; the limited purpose public figure test does not take
into consideration the understanding of the publication=s viewers. 
The court decided one issue in Allied=s earlier appeal:  that Allied
was not a public figure.  The Alaw of the case@ does not prevent Allied=s claim that the segment was Aof and concerning@ Sweepstakes Clearinghouse.[5]

We reverse
the judgment of the trial court and remand the cause to the trial court for
further  proceedings.         

 

W. G.
ARNOT, III

CHIEF
JUSTICE

March 20, 2003

Panel consists of: Arnot, C.J., and

McCall, J., and McCloud, S.J.[6]











     [1]Allied also named Fox Television Stations, Inc., and NW
Communications of Texas, Inc. d/b/a KDFW-TV (Channel 4) as defendants.  At some point, Allied also asserted claims
against Peter Brennan.  Allied nonsuited
these three defendants before the trial court granted Paramount=s motion for summary judgment.   





     [2]Because of our disposition of Allied=s first two issues, we need not address Allied=s third, fourth, and fifth issues.  TEX.R.APP.P. 47.1.   In its third, fourth, and fifth issues, Allied asserts that the
trial court erred in considering new summary judgment grounds and evidence
presented in Paramount=s reply brief, that the trial court erred by denying
its motion for partial continuance of the summary judgment hearing, and that
the trial court erred in allowing Paramount=s
improper and inadmissible evidence into the record.  





     [3]Paramount contends that the entire segment was
fiction.  We disagree for the reasons
discussed below, but we note that the Aof
and concerning@ test for fictional works is essentially the same.  The test is whether persons who knew or knew
of the plaintiff could reasonably have understood that the fictional character
was a portrayal of the plaintiff. See Middlebrooks v. Curtis Publishing
Company, 413 F.2d 141, 142 (4th  Cir.
1969); Fetler v. Houghton Mifflin Company, 364 F.2d 650, 651 (2nd Cir. 1966);
Davis v. R.K.O. Radio Pictures, Inc., supra at 904.





     [4]We note that Paramount objected to portions of Allied=s summary judgment evidence and that Allied objected to
portions of Paramount=s summary judgment evidence.  The summary judgment evidence referred to in this opinion raised
fact issues precluding summary judgment. 
Therefore, we do not address Paramount=s
or Allied=s objections to any evidence that is not referred to in
the opinion.  Allied and Paramount did
not obtain rulings on their objections from the trial court.  Because it is not necessary for the disposition
of this appeal, we do not address whether the parties waived their objections
by failing to obtain a ruling.





     [5]Paramount also argues that the doctrine of judicial
estoppel prevents Allied from claiming that the segment was Aof and concerning@
Sweepstakes Clearinghouse.  Paramount=s argument is based on the claim that Allied=s position in this appeal B that the segment is Aof
and concerning@ Sweepstakes Clearinghouse B  is
inconsistent with the position that Allied took in the first appeal.  However, Allied has never taken the position
that the segment was not Aof and concerning@
Sweepstakes Clearinghouse.     





     [6]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.