## DAVIS v. R. K. O. RADIO PICTURES, Inc., et al.

District Court, S. D. New York.
Sept. 2, 1936.

Marc Hermelin, of New York City, for plaintiff.

William Mallard, of New York City (William S. Savage, of New York City, of counsel), for defendants.

LEIBELL, District Judge.

This is a motion to dismiss the bill of complaint on the ground that it does not state facts sufficient to constitute a cause of action against the two defendants or either of them. Plaintiff is Claire H. Davis, although she adds to her name as plaintiff the statement "also known as Cassandra or Casandra." The defendant R. K. O. Radio Pictures, Inc., is a producer of motion pictures, and in the case at bar produced a picture known as "Bunker Bean." The other defendant, R. K. O. Distributing Corporation, is, as its name indicates, a distributor of motion pictures to the exhibitors.

The bill of complaint pleads two alleged causes of action. It joins in the one complaint an action under section 51 of the Civil Rights Law of the state of New York (Consol.Laws N.Y. c. 6) and an action for libel, both arising out of the same set of facts.

In the first cause of action plaintiff claims that her name has been used by the defendants "for advertising purposes and for purposes of trade" without her written consent first obtained; in the second cause of action she claims to have been represented in the picture in a libelous manner as an "object of public hatred, derision, ridicule, contempt and obloquy, individually and professionally."

At the outset it should be noted that the bill of complaint is brought in complainant's legal name, Claire H. Davis, and that she verified said bill of complaint using her legal name, Claire H. Davis, the verification stating as follows:

"Claire H. Davis, being duly sworn, deposes and says:

"I am the plaintiff in the within entitled action,"
and she signs her name thereto, Claire H. Davis.

However, in paragraphs fourth, fifth, and sixth of the first cause of action (repeated as paragraphs eleventh, twelfth, and thirteenth of the second cause of action), plaintiff alleges:

"Fourth: That for many years past, plaintiff was and now is by profession an actress, psychic, palmist, author and lecturer, appearing under the name 'Cassandra' or 'Casandra.'

"Fifth: That the plaintiff under the name 'Cassandra' or 'Casandra' has practiced her profession as psychic and palmist, lecturer, author and actress in the United States of America, where she has achieved wide reputation, prominence and fame and has become known as a unique, competent and outstanding artist, celebrity and performer, and has enhanced and legitimately exploited her reputation so achieved, by appearing under the name 'Cassandra' or 'Casandra' at numerous theatres, vaudeville, clubs and private entertainments

given at gatherings at estates of most prominent persons.

"Sixth: That by virtue of plaintiff's professional skill, fame and reputation acquired as a result of her artistry the name 'Cassandra' has acquired a secondary meaning in the minds of the public as applying peculiarly and particularly to the plaintiff herein in her capacity as a psychic, palmist, author and lecturer."

Then follow allegations to the effect that defendants have produced and shown in motion picture theaters a picture known as "Bunker Bean," wherein "plaintiff's name 'Cassandra' or 'Casandra' a living person, is used" to present the plaintiff as "an illiterate, unkempt, slovenly, neglectful and low grade person; and as a cheat, faker, swindler, and surrounded with all the bunkum of witchery"; and that she was further represented as "a person of low and degraded morality and character and in a manner which did tend to hold her up to public ridicule and contempt."

An episode in the motion picture shows the chief character, Bunker, looking through some pamphlets in a desk drawer in his room. He picks out one of these pamphlets and its cover, enlarged, is flashed on the screen. It reads:

"Countess
CASANDRA
Fresh from European Triumphs
Tells
Past—Present—Future"

Annexed to the complaint as Exhibit A is the dialogue that takes place between the actors on the screen, in which the Countess Casandra takes part.

The character Bunker in the picture has several conversations with the Countess Casandra in which he, a simple man, is impressed by her pretentions that she has psychic powers and can tell him what character he was in history prior to his present reincarnation. She is aided in this by a certain Professor Bolthaser, and Bunker is finally informed that when he was on earth before he was an Egyptian Pharaoh, bearing the name of Ram Tah. The professor and Casandra, at the suggestion of Bunker, in consideration of $1,000, obtain for him the pretended mummy of himself when he was Ram Tah, the Egyptian Pharaoh.

The whole episode is intended to be humorous. Bunker is apparently duped by the Countess Casandra and Professor Bolt-

haser. But towards the end of the picture a dog is shown biting into the mummy, and, when he finally manages to pull the tape off, the alleged mummy is disclosed as a figure stuffed with sawdust.

Throughout the picture there is no reference to Claire H. Davis nor is any part of plaintiff's legal name mentioned. The character in the picture is the *Countess* Casandra. Plaintiff does not claim that the actress playing the part of Countess Casandra is made up to look like plaintiff or mimics plaintiff in any way.

Plaintiff does not claim that she ever assumed the name of "Countess Casandra" even as a stage name. The name "Casandra" is derived from Grecian mythology. The origin of the name is explained in the Encyclopedia Brittanica, Volume 4, Fourteenth Edition, at page 971.

Casandra, the daughter of Priam, has been associated in literature with prophecy. "Cassandra, Daughter to Priam, a Prophetess," is one of the characters in Shakespeare's play, "Troilus and Cressida." In her prophetic ravings she exclaims: "Cry, Trojans, cry! lend me ten thousand eyes, And I will fill them with prophetic tears." Act II, Scene II.

She prophesied the ruin of Troy and the death of her brother, Hector, but her prophetic warnings went unheeded.

Names of other mythological characters have not escaped those engaged in the amusement field or in business. "Hercules" and "Atlas" are assumed by theatrical strong men and by powder and cement companies. Other similar instances are numerous. They are all names that in the public mind have become associated with some particular trait, quality, or power.

The defendants had as much right to use the name "Cassandra" in their motion picture, for a character representing a fortune teller or an alleged psychic, as the plaintiff had to assume that name "as psychic and palmist."

Sections 50 and 51 of the Civil Rights Law do not apply to any assumed or "stage name" of the plaintiff. She never legally changed her name from Claire H. Davis by any statutory proceeding. She has not taken the name of Cassandra as her common-law name. Her only legal name is Claire H. Davis, the name she signed to the complaint, and that is the only name for which she can claim protection under the provisions of the Civil Rights Law.

In Smith v. United States Casualty Company, 197 N.Y. 420, 90 N.E. 947, 26 L.R.A.(N.S.) 1167, 18 Ann.Cas. 701, the Court of Appeals said that the legal name of a person consists of a given name or one given by his parents and a surname or family name, the name descending to him from them.

It has been held in Pfaudler v. Pfaudler Co., 114 Misc. 477, 186 N.Y.S. 725, that the name protected by the statute is a person's full legal name and not the surname by itself. To the same effect, Swacker v. Wright, 154 Misc. 822, 277 N.Y.S. 296. In Rosenwasser v. Ogoglia, 172 App. Div. 107, 158 N.Y.S. 56, it was held that a partnership name was not protected by the provisions of the Civil Rights Law. There is no claim by plaintiff of any alleged "unfair competition" on the part of the defendants in the use of the name "Cassandra" for one of the characters of the motion picture, or on any other basis.

As to plaintiff's second cause of action, for libel, it does not appear that the dialogue in Exhibit A annexed to the complaint in any way relates to the plaintiff. It contains no reflections upon her whatsoever, and her averment that it does is not sufficient to make out a cause of action. See 37 Corpus Juris, p. 31. In Corr v. Sun Printing & Pub. Ass'n, 177 N.Y. 131, 69 N.E. 288, the court held that the complaint contained nothing to show that the alleged libel referred to the plaintiff, except her general allegation that the libel was published of and concerning her. Such a complaint is demurrable.

There is no reference in the alleged libelous matter, Exhibit A, annexed to the bill of complaint to Claire H. Davis, the plaintiff herein, nor is there any reference to her as "Cassandra." The character in the motion picture is designated as the *Countess* Cassandra. There is no allegation in the complaint that the plaintiff's photograph was used or that the actress playing the part of Cassandra looked or acted like plaintiff. The Countess Casandra, of the motion picture, is not represented as a professional actress, author, lecturer, or palmist, such as plaintiff claims to be. The character in the picture was a "psychic," a pretender, of course. Plaintiff claims also to be a "psychic." So was the original Cassandra, in story at least. But there must be something more substantial than that allegation to connect the alleged libelous matter in Exhibit A with the plaintiff herein.

For the reasons herein set forth, defendants' motion to dismiss the complaint on the ground that it fails to set forth a cause of action is granted in all respects.

Submit order on notice.