THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CHARLES SCRIBNER'S SONS and COLUMBIA PICTURES CORPORATION, Defendants.

City Magistrate's Court of New York, Borough of Brooklyn, Flatbush Court, April 29, 1954.

*Harry Ander* for Joseph A. Maggio, complainant.

*Horace S. Manges* for Charles Scribner's Sons, defendant.

*Myles J. Lane* for Columbia Pictures Corporation, defendant.

DUNAIF, M. The defendant, Charles Scribner's Sons, is the publisher of a book by one James Jones, entitled "From Here to Eternity," which has had a wide and successful circulation. The book contains the following statement by the author:

"Special Note

"This book is a work of fiction. The characters are imaginary, and any resemblance to actual persons is accidental. However, certain of the stockade scenes did happen. They did not happen at the Schofield Barracks Post Stockade but at a post within the United States at which the author served, and they are true scenes of which the author had first-hand knowledge and personal experience."

Thereafter, the defendant, Columbia Pictures Corporation, purchased the motion picture rights in the book and in 1953 released a motion picture based thereon. The contract of pur-

chase contained the following provision: "The Owner (author Jones) warrants and represents that * * * the use, reproduction, performance or exhibition of such work, or any part thereof, in the exercise of the right herein conveyed will not in any way infringe upon any rights of any party whomsoever, or constitute a libel or defamation of, or invasion of the rights of privacy of any party whomsoever."

James Jones, the author, was in Company F, 27th Infantry Regiment of the United States Army, stationed in Hawaii during the period just before Pearl Harbor, which is the period covered by his book. He was the company clerk. Also in that company at that time was the complainant, Joseph A. Maggio, whose full name is Joseph Anthony Maggio.

This work of fiction tells a story about persons who were in the Army stationed in Hawaii during the period referred to. One of the characters portrayed is called "Angelo Maggio." "Angelo" and "Maggio" are also terms used at various times in referring to this character. The book does not place this character in Company F, nor in the same battalion in which Jones and Maggio actually served. Nor does it in anywise portray acts which were actually performed by the complainant. Except for the alleged identity of name, none of the things which the character "Angelo Maggio" does in the book, nor any of the details of the background and life of "Angelo Maggio" as set forth in the book, are claimed by the complainant to be a portrayal of him or of his life and do not in anywise point to or identify him as the person intended or referred to.

The complaints against these defendants are based on section 50 of the Civil Rights Law of the State of New York which reads as follows: "A person, firm or corporation that uses for advertising purposes, or for purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

In support of these complaints, the complainant offered testimony that he was in the same company as the author, which company was stationed in Hawaii during the period covered by the book; that the author was the company clerk and was familiar with the names of the soldiers in the company and that several of the other names used incidentally in the book were the names of other soldiers in the company, although their correct full names were not used but only their last names with a different first name or nickname or no first name at all. The

motion picture is less detailed than the book, in regard to the character " Angelo Maggio " and fewer of these other soldiers are referred to.

A witness, Martuscelli, who was also in Company F at that time, testified that he called the complainant by the nickname " Angelo ", but in response to a question by the court whether anybody else knew complainant as Angelo there, the witness answered in the negative.

It is generally understood that novels are written out of the background and experiences of the novelist. The characters portrayed are fictional, but very often they grow out of real persons the author has met or observed. This is so also with respect to the places which are the setting of the novel. The end result may be so fictional as to seem wholly imaginary, but the acorn of fact is usually the progenitor of the oak, which when full grown no longer has any resemblance to the acorn. In order to disguise the acorn and to preserve the fiction, the novelist disguises the names of the actual persons who inspired the characters in his book. Since a novel is not biography, the details of the character's life and deeds usually have, beyond possible faint outlines, no resemblance to the life and deeds of the actual person known to the author. Thus, the public has come to accept novels as pure fiction and does not attribute their characters to real life. So long as the author does not use the true name of the character he may have had in mind, there is no basis for complaint. (*Toscani* v. *Hersey*, 271 App. Div. 445.) If he does use the true name of such character however, in a work sufficiently biographical though essentially fiction, he may violate section 50 of the Civil Rights Law even though the use of such name in a biography or news report is not such a violation (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51; *Krieger* v. *Popular Publications*, 167 Misc. 5).

The book and the picture " From Here to Eternity " do not purport to relate the actual life and deeds of Joseph A. Maggio. The details or events in the life of the fictional character concededly never happened to Joseph A. Maggio. Thus the person, if any, who may have given inspiration to the character " Angelo Maggio " in the author's brain was not Joseph A. Maggio. In searching for a name to give this fictional character, the author selected " Angelo Maggio." If he had not used the surname " Maggio " but some other name, the complainant could not by any stretch of the imagination have implied any identity of the character with himself.

We are thus required to determine whether by proof of the use of the name " Angelo Maggio " in a setting in the Army in Hawaii just before Pearl Harbor, together with an incidental reference, also by partial use of the last name only, to several other soldiers in the same outfit, the complainant, Joseph A. Maggio, has made out a violation of section 50 against these defendants.

Section 50, being penal in nature, must be strictly construed (*Binns* v. *Vitagraph Co.,* 210 N. Y. 51, 55, *supra; City of New York* v. *Fredericks,* 206 N. Y. 618, 623) and "purely statutory offenses" cannot be established by implication and acts otherwise innocent and lawful do not become crimes unless there is a clear and positive expression of the legislative intent to make them criminal (*People* v. *Phyfe,* 136 N. Y. 554, 559).

While section 50 prohibits the use of the name of any living person for purposes of advertising or trade, it is obvious that in a work of fiction there is always the probability that, no matter what name is used, there is always some living person with that name. Therefore, the mere use of such name is insufficient to constitute a violation of the statute. (*Swacker* v. *Wright,* 154 Misc. 822, 823.) The legal name of a person consists of his given name and his surname. (*Smith* v. *United States Cas. Co.,* 197 N. Y. 421, 423.) Thus, the word " name " as used in the statute means a person's full name and not merely his surname. (*Pfaulder* v. *Pfaulder Co.,* 114 Misc. 477, 478), unless the surname as used is associated with some identifying material which unmistakably identifies the complainant (*Orsini* v. *Eastern Wine Corp.,* 190 Misc. 235, affd. 273 App. Div. 947), or the surname standing alone has been so used by the complainant as to be well known to the public as identifying the complainant (*Adrian* v. *Unterman,* 281 App. Div. 81, affd. 306 N. Y. 771).

The statute protects the true name of a person from use for purposes of advertising or trade. It does not protect a nickname known to a few intimates any more than it protects a business name (*Jaccard* v. *Macy & Co.,* 176 Misc. 88, affd. 265 App. Div. 15), or a partnership name (*Rosenwasser* v. *Ogoglia,* 172 App. Div. 107), or an assumed name (*Davis* v. *RKO Pictures,* 16 F. Supp. 195). A debatable exception may exist with respect to a stage or theatrical name which has become known to the public and identifies its bearer virtually to the exclusion of his true name (*Gardella* v. *Log Cabin Products Co.,* 89 F. 2d 891).

To violate the statute, the name must be used in such a context as to unequivocally point to and identify the complainant. The use of the word " name " in the statute, in association with the

words " portrait " or " picture " clearly indicates that this was intended. A portrait or picture leaves no doubt as to the identity of the subject. Where a name is used, it, like a portrait or picture, must upon meeting the eye or ear, be unequivocally identified as that of the complainant. In the case of a name having no public recognition, this can be established only by a clear showing that the details surrounding the fictional character portrayed are such as to identify the complainant as the person of that name in that particular setting. If they do not, then taken with the statement of the author that all characters portrayed are wholly fictional, the identity of name must be set down as a pure coincidence, since there always will be persons with similar names and writers of fiction could not give names to their characters without violating the statute. Such result was clearly never intended by the Legislature and is not within the contemplation of the statute. Otherwise the writing of fiction would always be susceptible to the hidden and virtually unavoidable peril of making authors and publishers criminal perpetrators.

The purpose of section 50 was plainly to prevent anyone from capitalizing on the name, portrait or picture of any living person without that person's written consent. Therefore, in order to establish a violation of the statute, such intent to capitalize on the complainant's name must be shown (*Nebb* v. *Bell Syndicate*, 41 F. Supp. 929).

The complainant was not a public or well-known personality, but like most of us, an obscure member of society. Insofar as these defendants were concerned, the name of this character in the book and motion picture could have as well been any other name with the same effect and result. They surely had not intent to capitalize on complainant's name and were not shown to have done so.

The complainant's name is not Angelo Maggio. It is Joseph Anthony Maggio. Even if these defendants had not relied solely on the author's statements and representations that no actual living character was portrayed and had made a search of the Army roster in Hawaii for the period involved, no Angelo Maggio would have turned up therein. Complainant claims to have been known as " Angelo " to his associates in the Army, but it has not been established that these defendants were aware of this, even if such nickname were protected by the statute, which, as above stated, it is not. These defendants accepted the author's representations as published in the book with the same

circulation as the reference to "Angelo Maggio", in good faith and total innocence. Therefore, the complainant has not, as to them, established the intent to capitalize on the use of his name, which is a vital ingredient of the crime charged. (*Nebb* v. *Bell Syndicate, supra.*)

The name "Maggio" is a fairly·common name. In the Brooklyn telephone directory alone there are listed well over one hundred persons by that name. Persons whose names are similar to those used in fiction are, perhaps, unduly sensitive about anything that is written concerning the portrayed character and are quick to attribute such references to themselves. As long as fiction is written, this is often unfortunate but nevertheless impossible of complete avoidance. A person with such sensitivities has, nevertheless, no legal basis for complaint unless not only does the name used completely and accurately coincide with his, but also the context singles him out and points to him, as does a portrait or picture, as the person referred to. Both ingredients must be present, as the mere use of the name is not enough (*Swacker* v. *Wright,* 154 Misc. 822, *supra*) and the portrayal of the character without the concomitant use of such name is likewise insufficient. (*Toscani* v. *Hersey,* 271 App. Div. 445, *supra.*)

The complainant has not made out a case against these defendants sufficient to constitute a violation of section 50 of the Civil Rights Law. Accordingly, both these complaints against the defendants Charles Scribner's Sons and Columbia Pictures Corporation are dismissed.