J. Irwin Shapiro, J.
Plaintiff sued for libel as a result of the publication by the defendant, a newspaper, of an article headed “ Off-Beat Drummer Boy Hooked, Tried to Put Bite on Bait Dealer ” and which in the body of the story read in part:
Five, ten minutes go by and in comes this blonde kid with that clean-cut look. Nobody minds that he’s dressed like a businessman because he is a regular there, and is really about as square as a 10-ball, He plays the skins — a drummer — and he has let it get around that he, Mickey Sheen, has been with the big-timers, Stan Kenton, Buddy Scott. You know.
He sits down next to the motorcycle character.
Five minutes more go by. The door opens and into the gloom walks a middle-aged man wearing a what-am-I-doing-in-a-place-like-this look. He edges over to the bar, motions to the bartender, and croaks:
“I’m looking for Jonesy.”
*1016 nobody looks up when drummer-boy Sheen says “I’m Jonesy.” That’s his affair. Nobody, that is, except Mr. Motorcycle Jacket. He stays glued to the bar as Sheen and the middle-aged fellow walk to a booth in the back, but his head is like on a swivel. He watches.
There is a short conversation in the booth, then Sheen gets up and heads for the coat-rack. As he does, the middle-aged man takes out a handkerchief and coughs, discreetly, but loud enough to cut through the bar-talk.
bang!
Mr. Turtle-neck is out of his seat and before you can say make mine extra dry he is pinning Sheen’s arms behind him and hustling him back to the booth. Sheen’s lower jaw is approaching the floor.
Yes, says the middle-aged fellow, pointing to Sheen, that’s the one.
# # »
turtle-neck reaches into Sheen’s jacket and lifts out an envelope. Inside is $500, in marked bills.
All three go back to the Rockaway Beach stationhouse and Sheen is booked on an extortion charge. Only the name isn’t Mickey Sheen. It’s John Watson. He’s 19 years old and lives at 1815 Marine Parkway, Brooklyn.
And Turtle-Neck gets out of his costume. He turns out to be Detective Sgt. Vincent Chisari, commander of the Rockaway Beach Squad.
Plaintiff’s complaint was dismissed by the court as a matter of law and on the merits after plaintiff’s opening without the taking of any proof.
I have had some occasion to go into the question of the law of libel in the past. In fact, I had occasion to go into the law of libel in a situation where this very same defendant was the defendant in an action tried in the Supreme Court, Queens County, which was submitted to the jury, and I have concluded from my study of the law that in order to be able to arrive at the meaning of an article you must read the article as a whole and in its entirety. The language must be examined in its context and given its natural import and its plain and ordinary meaning. We cannot analyze the words in a newspaper article as they would be read with a great deal of analysis and precision in a courtroom.
As the court said in Sydney v. Macfadden Newspaper Pub. Corp. (242 N. Y. 208, 214): “ The court should take the defamatory publication in determining its characteristics and result in the same way that the reading public, acquainted with the parties and the subject would take it.”
And'in an old case, Turrill v. Dolloway (17 Wend. 426, 428) which was reversed on other grounds (26 Wend. 383), we find a very good statement of the applicable law: “Judges and jurors now read the words in court, as they would read them elsewhere; they no longer resort to those constructions which make that language innocent in the halls of justice, which was full of calumny when spoken or published out of door.”
*1017 Looking at this article in that light, as the average reader would look at it, and not by pecking away at it in a courtroom, and giving the plaintiff the benefit of every possible inference therefrom, I nevertheless have come to the conclusion that it does not state a libel.
Where the article itself is clear and unambiguous as is the article in this ease, an innuendo may not be utilized to bring out an alleged hidden meaning, and reliance must be placed upon a reading of the article itself. Under the circumstances, its meaning becomes a question of law for the court.
Where it admits but of one sense, as the article in this case does, the question of whether or not there is a libel is one which the court must decide.
And, as the court said in Crane v. New York World Tel. Corp. (308 N. Y. 470, 479-480): “A court, it is fundamental, should never take from a jury doubtful questions of fact, but it is equally basic that a court shirks its duty if it creates an issue, when none exists, solely to foist decision upon a jury.”
I feel that in this case it would be unfair to the defendant to protract this trial where if the jury found for the plaintiff, I would inevitably set aside the verdict and dismiss the complaint.
Likewise, having that feeling as a matter of law, it would be unfair for me to permit this case to continue, to permit the plaintiff to spend money in producing witnesses to build up a long record which would have to be printed if he desires to go to the Appellate Division.
Under the circumstances, and because it will enable the plaintiff to review this'ruling with a short record, and because the article makes it crystal clear that Mickey Sheen was a name adopted by this man Watson, who was in fact arrested for extortion; that he had no right to use the name — he was not authorized to use the name; and that he was not in fact Mickey Sheen, or anyone by that name, is also made very, very clear by the article. As a matter of fact, alongside of the article is a picture of John Watson, who used falsely and wrongfully the name of Mickey Sheen. All this the article makes indubitably clear. Under the circumstances, this plaintiff whose theatrical name is Mickey Sheen cannot be held to have been libelled.
The motion to dismiss the complaint as a matter of law is granted and the complaint is dismissed on the merits.