Harold Randall SMITH, a minor by Evelyn Smith, his mother and next friend, and Evelyn Smith, Plaintiffs,

v.

**HUNTINGTON PUBLISHING COMPANY, Defendant.**

**Civ. A. No. 9010.**

United States District Court, S. D. Ohio, W. D.

May 5, 1975.

---

Lloyd E. Moore, Ironton, Ohio, for plaintiffs.

Paul R. Moran, Cincinnati, Ohio, for defendant.

## MEMO ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TIMOTHY S. HOGAN, Chief Judge.

This is an action for damages which was removed from the Court of Common Pleas, Lawrence County, Ohio. The plaintiffs, Harold Randall Smith, a minor, and Evelyn Smith, his mother, claim that the defendant, Huntington Publishing Co., published an allegedly libelous article on October 5, 1973, which, it is claimed, defamed them. Now pending is the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

██ When the subject of an alleged defamation is a newspaper article, the issue of whether the article is libelous per se is one for the Court. *Beauharnais v. Pittsburgh Courier Publ. Co.,* 243 F.2d 705 (7th Cir. 1957). Further, the question of whether words are reasonably capable of defamatory interpretation is for the Court. *Belli v. Orlando Daily Newspapers,* 389 F.2d 579 (5th Cir. 1967); *Bigelow v. Bromley,* 138 Ohio St. 574, 37 N.E.2d 584 (1941); *Drye v. Mansfield,* 32 Ohio Misc. 70, 288 N.E.2d 856 (1972).

This action is based on a remarkable set of facts. The allegedly libelous publication arose out of a meeting in South Point, Ohio, which was organized by a group of concerned parents for the purpose of dealing with a growing drug problem among the young people in the community. South Point is an Ohio town of about 2500 people and within the territorial circulation and sphere of the defendant's newspaper which is published in Huntington, West Virginia, but "covers" the Ohio-Kentucky-West Virginia Tri-State area. A reporter for the defendant by the name of Paul T. Miller attended the meeting for the purpose of obtaining a story. The organizers of the meeting were the plaintiff Evelyn Smith and one Mrs. Bowman. Mrs. Smith chaired the meeting. During the meeting, Mrs. Bowman spoke of her son's addiction and subsequent mental problems. The reporter sought out Mrs. Bowman and asked her if she would object to a feature story being written about her experiences and those of her son. She stated that she had no objection, provided neither her name, nor her son's name was used in the article.

On October 5, 1973, the article was published. It (copy) is attached as Exhibit A. It described how Mrs. Bowman's son had suffered a drug overdose and was found lying in the street. The reporter went on to chronicle the events following the overdose and the effects on the boy and his family. In the article, the mother and her son were given the names of Mrs. Smith and Randy Smith. It was stated in the third paragraph, nine lines from the top, in boldface print, that the names were fictitious, but the story was true. After receiving a call from the plaintiffs, the defendant published a clarification the following day restating in headline form that the names used in the prior article were fictitious.

██ The plaintiffs have instituted this action claiming that they were libeled by the article. It was alleged in the complaint that the publication was malicious and that the defendant intended to injure the reputations of the plaintiffs. However, the evidence on this record is uncontroverted that the reporter did not know either Randy Smith or Mrs. Smith, and that the choosing of those names was merely a coincidence.[1]

---

1. To be sure of presenting the problems clearly, the real Mrs. Smith, mother of the real Randy Smith, was one of the speakers prominent at the meeting. While there is no controversy that the reporter Miller did not know that the speakers included a Mrs. Smith and did not know that there was an 18-year-old, her son, resident of and of some prominence in South Point, his newspaper only a few months before had published some material on Randy—so that, if a reckless choice of a "ficti- tious" name be of import in *either* a libel or invasion of privacy case, there is an issue of fact of the "recklessness" of the choice. As we view it, we think, with some misgivings, that in this case "recklessness" of choice is irrelevant. Viewed either as a libel or invasion of privacy case, we think the problem is—fairly reading the entire article, can a reasonable mind conclude that the article identified and was about the real Randy Smith.

A party cannot rest on the allegations of his complaint when a motion for summary judgment is made and supported, but rather he must set forth specific facts showing that there is a genuine issue to be tried. Fed.R.Civ.P. 56(c). Therefore, we must accept as true the statement by the reporter that he had no intention of injuring the plaintiff and the use of the names was coincidental.

The issue presented by way of this motion may be stated as follows:

Is a valid claim for libel stated where a reporter writes a true story, stating that the names are fictitious, but, by coincidence, uses the plaintiff's name, the plaintiff having characteristics very similar to those of the person intended to be described?

Libel is defined as a publication, in print or in writing, which exposes or reflects on the character of the person being described and subjects him to ridicule, hatred or contempt, or affects him injuriously in his trade or profession. 53 C.J.S. *Libel and Slander* § 1 (1948). Such a publication which has the above effect *is considered* libelous per se. *Becker v. Toumlin,* 165 Ohio St. 549, 138 N.E.2d 391 (1956). However, it is equally true that the publication must refer to some person and the plaintiff must show that he is the person about whom the statement was made. *Woolf v. Scripps Pub. Co.,* 35 Ohio App. 343, 172 N.E. 389 (1930). The above rule has been qualified somewhat in the context of fictional characters and fictitious names. The test is neither the intent of the author, nor the recognition by the plaintiff that the article might be about him. The test is whether a reasonable person could reasonably believe that the article referred to the plaintiff. *Middlebrooks v. Curtis Pub. Co.,* 413 F.2d 141 (4th Cir. 1969); *Wheeler v. Dell Pub. Co.,* 300 F.2d 372 (7th Cir. 1962); *Robinson v. Guy Gannett Pub. Co.,* 297 F.Supp. 722 (D.Me.).

In determining whether the article could reasonably be calculated to refer to the plaintiff, a Court must compare the plaintiff's characteristics to those of the person described in the article. This is known as the process of identification. See, e. g., *People on Complaint of Maggio v. Chas. Scribner's & Sons,* 205 Misc. 818, 130 N.Y.S.2d 514 (1954); *Landau v. CBS,* 205 Misc. 357, 128 N.Y.S.2d 254 (1954). Both the plaintiff Randy Smith and the boy described in the article are male, age 18, residents of South Point, and both had mothers who were involved in the organization concerned with drug abuse.

The defendant contends that there are so many essential differences between the real Randy Smith and the fictitious Randy Smith that no reasonable person could possibly believe that the article, even excluding the "fiction" disclaimer, concerned the plaintiff. We cannot agree. The facts set forth by the defendant that the plaintiff did not use drugs, or that he had a sharp mind, or that he never was in the hospital, or that he never knew the prosecutor are indeed differences, but they are not differences which would cause a reader to rule out the possibility that the person described might be the plaintiff. In other words, a person who only knew the plaintiff casually, or who had not seen him in some time might reasonably believe that the article concerned the plaintiff on the basis of the age, residence, and name. Therefore, we cannot say on the basis of the biographical factors related in the article, as compared to the plaintiff, that no reasonable person could identify the character in the article as the plaintiff (lacking the fictional disclaimer).

However, we must also consider the clarification contained in the article that the names contained therein were fictitious. The defendant contends that, as a matter of law, this Court must hold that no reasonable person could believe that the article concerned the plaintiff in view of the fact that the article specifically states that the names are fictitious. The defendant cites as authority those cases dealing with the use of aliases and also fictional publications using names possessed by real persons. *Scheinblum v. Long Island Daily Press Pub. Co.,* 37

Misc.2d 1015, 239 N.Y.S.2d 435, aff'd 18 A.D.2d 841, 239 N.Y.S.2d 533 (1962); *Middlebrooks v. Curtis Pub. Co.,* supra; *Wheeler v. Dell Pub. Co.,* supra; *Clare v. Farrell,* 70 F.Supp. 276 (D.Minn.1947).

The plaintiffs contend, first, that the author showed a reckless disregard for the truth, or at least was negligent in not investigating the possibility of someone being named Randy Smith. Also, they contend that the author should have placed the admonition closer to the beginning of the article. The plaintiffs are unable to cite any authority directly on point. Again, the test to be used in resolving this issue is whether a reasonable person could reasonably believe that the article pertained to the plaintiff.

■ It is the holding of this Court that, as a matter of law, no reasonable person could have reasonably believed that the article pointed to the plaintiff in the light of a clear statement by the author in boldface print that the names were fictitious. We base this holding on (1) the law as is stated in the related area of fictional publications and the use of fictitious names, and (2) the innocent construction rule approved by the Sixth Circuit in the case of *England v. Automatic Canteen Co. of America,* 349 F.2d 989 (6th Cir. 1965) (a diversity case arising in Ohio).

■ It has been held that an author writing a novel to be distributed across the nation or around the world is under no duty to foreclose the possibility of anyone being identified with the fictional character. See *Clare v. Farrell,* supra; *People on Complaint of Maggio v. Chas. Scribner's and Sons,* supra. However, a closer case is presented where a reporter uses a fictitious name in an article to be published in a small town newspaper with limited circulation. In such a situation, he may be under a greater duty to investigate, but we know of no authority to that effect, and we are not prepared to graft an exception to the general rule as stated above.

■ In addition, we apply the "innocent construction" rule which provides that "an article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so used and declared nonactionable as a matter of law." *Porcella v. Time, Inc.,* 300 F.2d 162 (7th Cir. 1962), quoted in *England v. Automatic Canteen Co. of America,* supra. We fail to see how any reasonable person could be misled, given the obvious and plain meaning of the words therein.

The plaintiff's contention that the admonition should have been at the very beginning is not persuasive. Whether the admonition was in the fourth line or the ninth line cannot be controlling.

Due to the above determination, we need not consider the remaining issues raised. There being no genuine issue of fact, the motion for summary judgment is granted in favor of the defendant as to both[2] plaintiffs, and the defendant may present an appropriate judgment forthwith.

---

2. As to Mrs. Smith, there is nothing in the article libelous as to either the real or fictional Mrs. Smith. Viewed as an invasion of privacy case, the identification v. fictional problem is the same.